Peter R. FITZPATRICK, Petitioner,

v.

Louie L. WAINWRIGHT, Jim Smith, Respondent.

No. 84–8204–Civ.

United States District Court,
S.D. Florida.

Feb. 7, 1985.

Margaret Good, Esq. and Lorrie Robinson, Asst. Public Defenders, West Palm Beach, Fla., for petitioner.

James P. McLane, Asst. Atty. Gen., West Palm Beach, Fla., for respondent.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

ARONOVITZ, District Judge.

Petitioner Peter R. Fitzpatrick, here represented by the Public Defender, Fifteenth Judicial Circuit of Florida, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254. He attacks his convictions on four counts involving the sale of unregistered securities, four counts of fraud, and four counts of grand theft entered on September 29, 1982 after jury trial in the Circuit Court for the Fifteenth Judicial Circuit of Florida, Palm Beach County.

Petitioner has raised two issues as follows:

1.  (a) Whether he was deprived of his Sixth and Fourteenth Amendment right to counsel by being tried without counsel in the absence of a knowing and intelligent waiver of counsel; and,

    (b) By being compelled to proceed without counsel in the absence of a determination that he could afford to retain counsel.

2.  Whether he was deprived of his Sixth and Fourteenth Amendment right to counsel by being sentenced without counsel without inquiry by the Court as to his ability to retain counsel.

These issues were raised on direct appeal, and the conviction was affirmed, *per curiam*, without opinion, *Fitzpatrick v. State*, 447 So.2d 1367 (Fla. 4 Dist. 1984). The Petitioner has therefore exhausted available state remedies.

Petitioner contends that during the eighteen-month period from the filing of the Information until appointment of counsel for appeal, that the trial court never actually conducted an "indigency" hearing wherein inquiry could and should have been made about his solvency and ability to retain private counsel, or his eligibility for court-appointed counsel. He further contends that the term "indigency" or "indigent" was never explained to him until post-sentencing when thereafter, for purposes of appeal, the trial judge did conduct such an indigency hearing for the first time, found the Petitioner to be indigent, and thereupon appointed the Public Defender to represent Petitioner on appeal. He further urges that there was not a knowing, intelligent, and voluntary waiver of right to counsel, resulting in his enforced *pro se* representation by the court and the state at trial.

The state responds that the record shows Petitioner's "affirmative acquiescence" to proceed to trial *pro se* and without the benefit of such an indigency hearing; that the record fails to show that his acquiescence was not sufficiently intelligent to amount to an effective waiver of his right to counsel.

The United States Magistrate found and recommended in her Report, Page 23, that:

"The record reveals that this petitioner was highly educated and a sophisticated securities broker who knowingly and voluntarily waived his right to counsel and chose to represent himself, both at trial and at sentencing. When that course failed, he had second thoughts and decided to accept counsel. A trial judge, however, is not required to do more than explain the right to appointment of counsel, in the absence of any indication by a defendant that he cannot afford a lawyer and wants one appointed. *Government of the Canal Zone v. Peach*, 602 F.2d 101 (5 Cir.1979), *cert. denied*, 444 U.S. 952 [100 S.Ct. 426, 62 L.Ed.2d 322] (1979)."

As to those findings not inconsistent with any set forth herein, this Court accepts and adopts the findings of the United States Magistrate as to events which occurred during the eighteen-month period,[1] but specifically rejects the United States Magistrate's conclusions of law drawn therefrom and sustains the Objections thereto of the Petitioner, for the reasons hereinafter more fully stated.

## ADDITIONAL FINDINGS

This Court hereby makes certain additional findings to those set forth in the Magistrate's Report as hereinafter noted:

On December 16, 1981, in moving to withdraw from representing Petitioner, Mr. Weissman (his retained counsel) informed the Court that he and the prosecutor [Oliver Harris] would like to get Petitioner a Public Defender. Weissman told the Court he didn't "think [Fitzpatrick] can afford counsel anymore". (TR–10). An additional hearing not mentioned in the Magistrate's Report was held on January 6, 1982. Petitioner appeared with an attorney, Leon St. John. (SRII–2–8).[2] Mr. St. John told the Court that he had just read the fourteen count Indictment and spoken with Mr. Harris. St. John had not spoken with Petitioner since St. John had become aware of how "intricate the case is". (SRII–3). Due to the nature of the charge and Petitioner's significant defenses, the cost to Petitioner was going to be "significant". (SRII–2–4).

1. A fourteen count Information herein was filed on June 19, 1981; Defendant/Petitioner surrendered December 3, 1981 with private counsel who later withdrew; trial commenced June 1, 1982; sentencing hearing was held September 29, 1982; and a hearing was held October 7, 1982 wherein Defendant/Petitioner was informed of his right to appointed appellate counsel, and a hearing held to determine his indigency, resulting in appointment of appellate counsel.

2. Supplemental Record on Appeal, Volume II, pages 2 through 8.

Petitioner did not have liquid assets but hoped to pay St. John within a week. St. John said a continuance to prepare for trial would be necessary in any event and the case was reset.

On April 1, 1982, the state filed a Motion to Compel Defendant to Retain Counsel or to Proceed *Pro Se.* (TR–775–778). The grounds for this motion were that Petitioner was deliberately refusing to retain counsel in order to delay trial proceedings. This Motion was filed by a new Assistant State Attorney who had not been present at any of the previous status check hearings. The Motion made no mention that Petitioner had said on several previous occasions that he was trying to get enough money to pay a lawyer, that Petitioner and St. John had indicated a substantial amount of retainer money was required, that the state had acquiesced in Weissman's statement on December 16, 1981, of Petitioner's need to get a Public Defender, and that the state had only recently suggested on February 26, 1983, that a Public Defender was one of the possibilities in this case.

On May 3, 1982, when Petitioner asked about the state's suggestion that he could have a court-appointed attorney, the Court did not inform Petitioner of his right to counsel if he could not afford counsel, but rather, the Court told Petitioner that he had to be "indigent". (TR–18–C). The Court made no inquiry into Petitioner's financial condition nor did the Court tell Petitioner the meaning of the legal term "indigency". On May 3, 1982, the Court signed an Order compelling Petitioner to retain counsel by May 28, 1982, or proceed *pro se.* (TR–786). Before signing the order, the Court did not make any inquiry required by *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), advise Petitioner of the dangers of self-representation, nor determine if Petitioner was aware of the complexities of the case.[3] On May 28, 1982, Petitioner appeared without counsel and announced, "I am here to com-

ply with the Order, Your Honor, which says that I don't have an attorney, I am to proceed *pro se*". (TR–39).

On the second day of trial, as the complexities in the case surfaced, Petitioner stated, "I have to get a lawyer". (TR–434). Petitioner's lack of understanding of the meaning of self-representation due to the Court's failure to inquire as required by *Faretta v. California* before compelling Petitioner to proceed *pro se,* and Petitioner's lack of understanding of the meaning of the term "indigency", is also revealed by the Petitioner's begging the Court to postpone closing arguments because he was totally confused. This colloquy ensued:

[Ms. Suarez-Murias] Mr. Fitzpatrick has had the opportunity to engage counsel. He has never told this—and I asked him specifically during one of the many hearings: Do you need a Public Defender, are you, you know, are you indigent, and he never made a motion to that effect, Your Honor.

I suggest that he has had the opportunity to hire one of the very many competent attorneys in Palm Beach or anywhere else, Your Honor.

He has chosen that, and I suggest that at this point the chips have to fall where they may.

MR. HARRIS: He made one final comment, Your Honor, he also told the jury he did not need an attorney because the case was not complicated.

THE DEFENDANT: Can I answer?

THE COURT: Yes.

THE DEFENDANT: Your Honor, that doesn't make any sense, at all. I don't know anything about the law. So, I thought this case wasn't complex. I think that's my answer to that.

Now, as far as Miss Suarez-Murias reading off a whole list of reasons: I had plenty of time, I could have declared myself indigent, I thought upon until last Thursday, Your Honor, that I would have representation. I could not get—I

---

**3.** And separately and apart therefrom, as previously noted, the Court did not hold an "indigen-

cy" hearing.

could not make the necessary financial arrangements that would—that would satisfy the attorney involved.—

So, therefore, rather than ask for a lawyer last Friday and get myself in more trouble because you said to me no more continuances, I said, not knowing anything about how complex this was, I asked for, for the case to be tried.

Now, as far as all the notices I assumed that when the time came I would have counsel and they would take care of that.

But, too, as I say, I don't think that argument holds: I have had plenty of time. If I had been talking to legal—to lawyers and getting ready to go, but I never discussed this with a lawyer, Your Honor, because the funds were always the question.

Now, when you get right down to it, as I say, this is a very—whatever one of a hundred cases for a man who is defending himself in this type of case, I am not asking for anything other than to for a half a day to, I think, compose myself.

I do not have the witnesses. I said I got some problems personally, I have not been able to—this thing here is—I am up to my eyes in a week, and I need to just have this, you know, treat this thing like another case—let me finish,—have the State treat this like another case, I don't think it's fair to say I had plenty of time.

I spent my time trying to hire lawyers and seek financial arrangements. I have not discussed this thing.

(TR–580–582).

At the post-trial hearing of October 7, 1982, while informing Petitioner of his right to appointed appellate counsel and a hearing to determine his indigency, the Court for the first time equated the standard of indigency with an ability to afford counsel. The Court said:

[The Court] ... if you are unable to make some arrangements with Mr. Hackney, I will hear you again on that, on the question of whether or not you are indigent at that point where you cannot af-

ford to hire a lawyer. I will hear you again on the appeal side of it.

To which Petitioner responded:

I understand that, Your Honor. I wish you would have done that before.
(TR–746).

The trial court never made a factual finding that the Petitioner was financially able to retain counsel until post-sentencing and for appellate counsel purposes, when the finding was to the effect that he was indigent and *unable* to retain private counsel.

Fitzpatrick was repeatedly told he had to be "indigent" to be entitled to court-appointed counsel. The meaning of the legal term "indigency" was never explained to Petitioner. Fitzpatrick's statements at sentencing show that he did not understand the legal meaning of the term "indigency". Before sentencing, Fitzpatrick said he could not properly claim to be "indigent", that he had been unable to secure private counsel because of a liquidity problem and that if liquidity was a ground, he would like an attorney. (TR–711). He was *not* afforded an attorney at sentencing, nor an indigency hearing to determine whether he qualified for appointed counsel, at sentencing.

This Court further finds, contrary to the United States Magistrate, that throughout the proceedings, Fitzpatrick indicated a desire for counsel and that he was trying to make arrangements to employ counsel. The record shows that Fitzpatrick was making repeated efforts to secure private counsel, encountered financial difficulties meeting the substantial fees required, could not make enough money or free up family money to pay for an attorney. The record shows more than an indication that Fitzpatrick wanted counsel; it demonstrates his attempts to secure counsel and his request about a court-appointed attorney on May 3, 1982.

### CONCLUSIONS OF LAW

The seminal case of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) established the right of

an indigent defendant in a criminal prosecution in state court to have counsel appointed for him by reason of Sixth and Fourteenth Amendment rights. *The right to be furnished counsel does not depend on a request. Kitchens v. Smith,* 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971); *Carnley v. Cochran,* 369 U.S. 507, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). This right to counsel may be waived, but such a waiver is not valid unless the defendant has been informed of his right to appointed counsel and then intelligently and understandingly rejects the offer in clear and unmistakable language. *United States v. Cohen,* 419 F.2d 1124 (8th Cir.1969). In that case the Eighth Circuit pointed out that:

"... The court did not inquire of appellant at this proceeding whether he was able to retain counsel, apparently standing upon its earlier assumption that appellant was not in fact an indigent." *Id.* at 1126.

"As we have shown, the appellant clearly indicated at arraignment that he was unable to employ private counsel because his existing assets were then 'committed'. At that juncture, the district court was under a duty to make further inquiry, by whatever means appropriate, into appellant's financial condition in order to satisfactorily determine whether his apparent assets in the form of an unspecified interest in real estate so exceeded his outstanding liabilities that could *in fact* afford to employ an attorney.... [Emphasis supplied].

... The assumption of adequate liquidity from appellant's bald statement of 'I am buying some land', coupled with the court's personal knowledge of land values in the area of appellant's acreage, is not sufficiently 'appropriate inquiry' to ensure the appellant's Sixth Amendment rights. In light of the uncontroverted showing of appellant's indigency in this court, 'the record does not convincingly show that there was adequate inquiry into the question of [appellant's] financial ability to retain counsel, * * *.' *Wood v. United States,* 389 U.S. [20] at 20–21, 88 S.Ct. [3] at 4 [19 L.Ed.2d 20 (1967) ]." *Id.* at 1127.

The Fifth Circuit has recognized that a defendant's Sixth Amendment rights may not be used by a defendant in order to delay or postpone trial. *United States v. Fowler,* 605 F.2d 181 (5th Cir.1980), and *United States v. Silva,* 611 F.2d 78 (5th Cir.1980). However, in *Fowler,* the District Judge had carefully advised the defendant of his right to counsel, had elicited considerable testimony from him about his financial condition, and had made a factual finding that the defendant was financially able to retain counsel. *Id.* at 183. No such inquiry was made of Petitioner by the trial judge in the instant case and no such inquiry appears in the record prior to appointment of appellate counsel. *Silva, supra,* involved the denial of the last minute request for a continuance to retain counsel in lieu of already appointed Public Defender, and the issue there was the right of choice of counsel. There is no such issue here involved. *Government of the Canal Zone v. Peach,* 602 F.2d 101 (5th Cir.1979), cited in the Magistrate's Report, involved a confession suppression issue under *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and the Court there observed: "This is not a case where a defendant was required to plead or go to trial without the assistance of counsel". *Id.* at 105. Also, the Magistrate in that case made inquiry into Peach's financial ability to employ an attorney and at no time did Peach require or indicate to the Magistrate that he wanted an attorney appointed, nor did he make any effort to call any private attorneys while in custody although given an opportunity to do so. *See also, Anaya v. Baker,* 427 F.2d 73 (10th Cir.1970).

▮ This is not a case in which the Defendant made a knowing, intelligent and voluntary waiver of his right to court-appointed counsel. He was never afforded the hearing necessary to determine such right to court-appointed counsel. In effect, the order of the trial court directed him to retain coun-

sel or to proceed *pro se* to trial. There is not a sufficient factual basis in this record to conclude that this Defendant knowingly, intelligently and voluntarily chose to represent himself (*pro se*) after an appropriate explanation of the dangers of self-representation. This case simply does not fall into that category of circumstances. Similarly, it can be said and this Court finds that there was not a knowing, intelligent and voluntary waiver of counsel and a knowing and intelligent determination by the Defendant to proceed by self-representation at trial or at sentencing without counsel.

*Florida Rules of Criminal Procedure* 3.111(d) provides, in part:

(1) The failure of a defendant to request appointment of counsel or his announced intention to plead guilty shall not, in itself, constitute a waiver of counsel at any state of the proceedings.

(2) A defendant shall not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry into accused comprehension of that offer and his capacity to make that choice intelligently and understandingly has been made.

(3) No waiver shall be accepted where it appears that the defendant is unable to make an intelligent and understanding choice because of his mental condition, age, education, experience, the nature or complexity of the case, or other factors.

*See also, Florida Statutes* Sections 27.51 and 27.52 (1983) setting forth the duties of a Public Defender to represent indigent or insolvent defendants and the method of determination of indigency. The Florida Court failed to follow its own rules and statutes here. Standing alone, and in and of itself, this would not necessarily constitute a basis for Federal Habeas Corpus relief. However, here the failure to observe state procedures grounded on Sixth and Fourteenth Amendment rights was so gross and obvious as to rise to the level of a denial of a fundamental right to representation of counsel under the Sixth and Fourteenth Amendments. This conclusion is *separate and independent* of the conclu-

sions otherwise reached in this ruling by this Court that, separate and apart from failure to conform to state law, the fundamental Sixth and Fourteenth Amendment rights of this Petitioner were violated and rose to the extent as to deny him a fair trial. The Petitioner is therefore in custody in violation of the Constitution and laws of the United States.

This Court has carefully reviewed the entire court record of proceedings in state courts and in this federal court proceeding, and has likewise heard oral argument by respective counsel upon the Petitioner's Objections to the Report of the United States Magistrate. Accordingly, it is

ORDERED and ADJUDGED that Peter R. Fitzpatrick's Petition for Writ of Habeas Corpus be, and the same is hereby GRANTED, provided, however, that if the State of Florida grants the Petitioner a new trial to commence WITHIN ONE HUNDRED TWENTY (120) DAYS HEREFROM, then this ruling shall be for naught. During the interim, the state and/or trial court may consider the advisability of a proceeding initiated at Petitioner's request, to allow him liberty on bond pending retrial.