**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**E. L. FOWLER, Defendant-Appellant.**

**No. 78–5677.**

United States Court of Appeals,
Fifth Circuit.

Oct. 26, 1979.

Rehearing and Rehearing En Banc
Denied Dec. 14, 1979.

Frank J. Petrella, J. Roger Thompson, Atlanta, Ga., for defendant-appellant.

Richard E. Nettum, Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before GODBOLD, GEE and RUBIN, Circuit Judges.

GEE, Circuit Judge:

This cause provides eloquent testimony, albeit negative, to the value of counsel's assistance to criminal defendants. Appellant Fowler, a dealer in gravestones and an apparent tax protester among other things, ceased filing federal income tax returns in

1953. A wheel that did not squeak, Fowler's practices at last attracted Revenue's notice in time to result in his indictment for willful failure to file returns for the years 1971–75. During the investigation, he cooperated with investigating revenue agents no further than by providing them with partial records for the years in question. A trial at which the government employed the "bank-deposits" mode of proof resulted in his conviction on all counts, and he appeals.

Fowler, who conducted his own defense at trial but is represented by counsel here, advances seven points of error. Six present little of merit and may be dealt with rather briefly, but the seventh is of slight difficulty. Upon a careful consideration of all, however, we affirm his convictions. We treat his contentions in the order in which he presents them.

Fowler's first complaint is of the court's refusal of a continuance to allow him more time to retain counsel. The real substance of his contention is that putting him to trial pro se violated his right to assistance of counsel. Defendant was first arraigned in March 1978 in the Northern District of Georgia, at which occasion he was represented by temporary counsel. His motion for change of venue to the Middle District was granted in late April; and in July he waived speedy trial in order to have his case tried in Valdosta at the October term of court to be held there. Over two months passed.

In September Fowler was served notice to appear for re-arraignment on October 6. He appeared there without counsel. At that time the court carefully advised him of his right to counsel and elicited considerable testimony from him about his financial condition, Fowler refusing to answer the direct question whether he was financially able to retain counsel on the ground of possible self-incrimination. The court then found as a fact that he was financially able to do so, a ruling not attacked here, and advised Fowler that his case would be called first on the trial calendar on October 16.

On October 8, Fowler called counsel in Salt Lake City, Utah, who in turn inquired of the judge and prosecutor about getting a continuance. The judge advised counsel that no continuance would be granted. On October 12, Fowler moved pro se for a continuance, attaching Utah counsel's affidavit that he could not take on the case because of inadequate time to ready it. The case proceeded to trial as scheduled, Fowler indignantly protesting the absence of counsel and representing himself. Little authority need be added to these facts to support our ruling. The grant or denial of a continuance rests in the broad discretion of the trial judge. *United States v. Uptain,* 531 F.2d 1281 (5th Cir. 1976). We have held before this that so short a time as twenty days is, in the circumstances there presented, a reasonable time in which to retain counsel and that failure to do so operated as a waiver. *United States v. Casey,* 480 F.2d 151 (5th Cir. 1973). We have done so even when the failure resulted in a pro se defense. *See United States v. Gates,* 557 F.2d 1086 (5th Cir. 1977), and cases cited there. The right to assistance of counsel, cherished and fundamental though it be, may not be put to service as a means of delaying or trifling with the court. This contention is meritless.[1]

Fowler's next point presents the greatest difficulty among those he advances, one that arises from the somewhat unsettled and only partially charted law of presumptions in criminal cases. In a nutshell, the problem is that burden-shifting charges in such cases are of doubtful validity—a doubt compounded by two recent Supreme Court cases going in at least superficially different directions;[2] and in Fowler's case the

1. Defendant also makes a half-formed claim that he was required to surrender his sixth amendment right to counsel in order to preserve his fifth amendment right against self-incrimination. The court's finding, not complained of here, that he was financially able to retain counsel moots this contention.

2. *Ulster County Court v. Allen,* —— U.S. ——, 99 S.Ct. 2213, 60 L.Ed.2d 777, handed down on June 4, 1979, upholds the New York statutory presumption that each occupant of an automobile in which firearms are present is in illegal possession of them, on the basis of the "more likely than not" standard. Two weeks later

court gave the convicting jury what sounds like a burden-shifting charge.

The context was this. Duty to file an income tax return results from receiving a given gross income during the accounting year concerned. Gross income of a business such as Fowler's is, generally speaking, calculated as gross receipts less cost of goods sold. In order to establish under the mode of proof it followed that Fowler had violated a duty to file, therefore, it was necessary for the government to establish, for any given period, both his gross receipts and his cost of goods sold. In the course of instructing the jury on this head, the court stated, among other matter not complained of, the following:

> To prove the defendant's gross income for the years in question it is incumbent upon the government to establish the cost of the goods sold by the defendant in each of the tax years. In this connection I charge you that it is incumbent upon the prosecution to investigate any leads which may be offered to the government by or on behalf of the defendant as to the cost of goods sold by the defendant in each of the taxable years. If these leads are reasonably susceptible of being checked the government must investigate into the truth of these leads or explanations. After the government has made a reasonable effort to identify and produce evidence of the cost of goods sold *the burden then shifts to the defendant to produce evidence of additional costs of goods sold.* When the defendant does then offer further evidence of off-setting costs the burden is then on the government to persuade you members of the jury that the costs are not allowable. It just depends on how the situation develops.

(emphasis added). Counsel for Fowler quite properly urges upon us the range of weighty due process considerations that attend requiring defendant to prove anything whatever in a criminal case. We conclude, however, that in the special context presented here they carry little force.

 In the first place, Mr. Fowler—proceeding without counsel—voiced no objection to this portion of the charge. Counsel's absence was of Fowler's own doing, and he must take its consequences. The instruction complained of could easily have been rephrased to remove its "burden then shifts" phraseology, which was in no way integral to the thought that it sought to convey.[3] Had the objections now made for the first time to us about this terminology been made to the charging judge, it is hard for us to conceive that he would have refused to amend it. At all events, it must, being unobjected to, amount to plain error to require a reversal. Plain error is defined by this court as one "so obvious that failure to notice it would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings,'" *United States v. Musquiz,* 445 F.2d 963, 966 (5th Cir. 1971) (quoting *United States v. Atkinson,* 297 U.S. 157,

---

came *Sandstrom v. Montana,* —— U.S. ——, 99 S.Ct. 2450, 61 L.Ed.2d 39, striking down (on a "reasonable doubt" standard) a presumption that a person intends the ordinary consequences of his voluntary acts. Insofar as we are able to deduce a rule from these opinions, it appears to be that merely permissive instructions to the jury ("You may infer . . ..") are to be tested by the "more likely than not" standard, while so-called "mandatory presumptions" of which the jury is advised ("The law presumes . . ..") are measured by a standard of "reasonable doubt." Such deductions may well be rash, however, the opinions being further complicated by distinctions between burden of proof, burden of production, etc., dissents, special concurrences, and the like.

Even so, analysis of the two opinions suggests that, in refusing to distinguish between permissive and mandatory language in this area, we may have adopted a rule more stringent than the Constitution requires. *See United States v. Chiantese,* 560 F.2d 1244, 1255 (5th Cir. 1977), (en banc), where we condemned the so-called *Mann* charge, similar to that given in *Sandstrom,* whether permissively or mandatorily phrased.

3. As an example, for the clause commencing "the burden then shifts" could have been substituted "it is then open to the defendant, if he wishes, to produce evidence of additional costs of goods sold."

160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)), to be noticed "only in exceptional circumstances to avoid a miscarriage of justice." *Easton v. United States,* 398 F.2d 485, 486 (5th Cir. 1968). This mild instruction, touching at most on the burden of production or proceeding and buried in a charge that correctly and repeatedly placed the burden of proof beyond a reasonable doubt on the government, does not constitute such an error.

In the second place, the charge as given amounts to little more than a statement of accounting fact and enjoys the additional merit of being true. Once the government has shown a spread between gross receipts and cost of goods sold, discharging its unusual task in such causes as this of making reasonable efforts against its own case by finding and adducing evidence of such costs, if the defendant wishes to narrow or destroy that spread by proving further costs it is up to him to do so. Thus, the charge in no sense shifts to the defendant any burden that he did not already have, *Siravo v. United States,* 377 F.2d 469 (1st Cir. 1967); at worst it merely tells the jury where the burden of going forward rested at one point in the case. And as given here, the words to which Fowler objects are followed in the court's next sentence by a reminder to the jury that even as to evidence of any additional costs produced by defendant, the burden of persuasion is on the government to show they are *not* allowable—not on defendant to show that they are. If the charge as given has a fault, it is in its implication that the defendant has some obligation to come forward with evidence of additional costs. This is, of course, not so, and the charge should have included some such disclaimer as "if he wishes" or the like. Where, however, the only consequence of his failure to do so, under the court's instructions, is that the government remains with the burden to prove both edges of the receipts-costs spread beyond a reasonable doubt, we see no harm to Fowler's substan-

tial rights. On the above considerations, we conclude that the charge was not reversibly erroneous.

■ Fowler next complains that the court erred in refusing to allow him to testify after he refused either to swear or affirm that he would tell the truth or submit to cross-examination. At one point in their extended colloquy on the point, the judge offered to accept the simple statement, "I state that I will tell the truth in my testimony." Fowler was willing to do no more than laud himself in such remarks as, "I am a truthful man," and "I would not tell a lie to stay out of jail." Rule 603, Federal Rules of Evidence, is clear and simple: "Before testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation . . .." No witness has the right to testify but on penalty of perjury and subject to cross-examination. This contention is frivolous.[4]

■ Fowler next urges that his sentence to three years incarceration should be vacated, basing this claim on the somewhat unusual case of *United States v. White,* 529 F.2d 1390 (8th Cir. 1976). There the appellate court vacated a jail sentence, though affirming a conviction, because "appellant did not clearly waive his right to counsel." *Id.* at 1394. Either Fowler waived his right to counsel by his actions or he did not. We have held that he did; and whatever *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), and *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), may mean, they do not mean that a defendant can jail-proof himself by waiving counsel and going to trial pro se.

■ Fowler's final three contentions merit little discussion. The trial court did not err in refusing to permit him to cross-examine a revenue agent about his knowledge of the outcome of an unconnected case in California. The evidence was sufficient

---

**4.** Fowler also contends that the court erred in failing to determine his competency to testify out of the presence of the jury. Fed.R.Evid. 104(c). This also is meritless: no request was made that the jury be excluded, and on an earlier occasion Fowler had refused to meet with the judge in chambers, grandstanding at length for the jury on the subject.

to support his conviction, even had a motion for judgment of acquittal been made—as it was not. Nor do the trial court's asserted errors, each of which we have found either not error at all or not reversible, require a reversal when considered cumulatively rather than singly.

'We cannot doubt that Fowler has derived substantial financial benefit from a long refusal to carry his share of the common burdens of citizenship. Sad to say, for he is a man no longer young, he must now respond not only in currency but in another coin: incarceration. Counsel's efforts on his behalf are commendable, but they came too late.

AFFIRMED.