**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kevin Elwood KRZYSKE,
Defendant–Appellant.**

No. 85–1760/1799.

United States Court of Appeals,
Sixth Circuit.

Argued April 20, 1987.

Decided Jan. 5, 1988.

Rehearing and Rehearing En Banc
Denied March 9, 1988.

Josephine A. Chapman, Belleville, Mich., Aaron T. Speck (argued), Taylor, Mich., for defendant-appellant.

Karen Reynolds (argued), U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Before MERRITT, WELLFORD and NORRIS, Circuit Judges.

WELLFORD, Circuit Judge.

Defendant-appellant Kevin Elwood Krzyske was indicted on April 16, 1985, and charged with ten tax-related counts: five counts of tax evasion for the years 1978 through 1982, 26 U.S.C. § 7201 (counts 1–5); four counts of failure to file tax returns for the years 1979 through 1982, 26 U.S.C. § 7203 (counts 6–9); and one count of filing a false withholding exemption certificate in 1982, 26 U.S.C. § 7205 (count 10). He was arraigned on April 17, 1985.

Jury deliberations commenced on June 25, 1985, and on June 26, 1985, Krzyske was acquitted on count 5 of tax evasion for 1982 and on count 10 of filing a false withholding exemption certificate in 1982. On June 27, 1985, Krzyske was convicted on counts 8 and 9 of failure to file tax returns for 1981 and 1982. The jury completed its deliberations on June 28, 1985, by acquitting on counts 2, 3, and 4 of tax evasion for 1979, 1980, and 1981 but convicting Krzyske on one count of tax evasion for 1978 and on counts 6 and 7 for failure to file tax returns for 1979 and 1980.

Trial Judge Joiner sentenced Krzyske to five years imprisonment on the count 1 felony conviction, and one year each on the misdemeanor convictions, counts 6 through 9. The sentences imposed on counts 6 through 9 were to run consecutive to one another and concurrent with the custody sentences imposed on count 1. Krzyske was also fined a total of $20,000.

On September 17, 1985, the district court granted bond on appeal conditioned upon Krzyske's promise: 1) to refrain from communicating with anyone other than his attorney regarding his beliefs about income taxes during the appeal; 2) to file back tax returns; and 3) to pay past due taxes. These conditions were imposed by the trial court to ensure the "safety of others, and the community." We set aside the first condition as a prior restraint of first amendment rights but affirmed the other two conditions. However, Krzyske did not fulfill the remaining conditions of his bond, and it was cancelled. Krzyske has appealed the propriety of those conditions through a petition for certiorari while incarcerated in Duluth, Minnesota. He has since been released by a subsequent order of this court on bond pending the outcome of this appeal.

We are faced with three issues on appeal in this case. First, Krzyske claims that it was error for the district court to allow him to go to trial without assistance of counsel. Second, he claims reversible error in the district court's instruction concerning "willfulness." Last, he claims he was entitled to a jury instruction concerning the doctrine of jury nullification of a conviction. For the reasons set out below, we affirm the district court in all respects.

**I.**

Krzyske's first argument is that he was not allowed assistance of counsel at his trial and arraignment. The record shows that he repeatedly requested that he be represented by a non-lawyer during his trial, but this request was refused. As a result of his refusal to properly request an attorney until the sentencing hearing, Krzyske represented himself.

Krzyske's arraignment was held on April 17, 1985, before Magistrate Komives. The magistrate informed him of his right to appointed counsel, but Krzyske indicated that he intended to obtain his own private counsel. The magistrate clearly left Krzyske the possibility of asking for court-appointed counsel at a later date by stating: "If you wish to have counsel appointed for you at some later time, you can make a request...." No more was said about representation during the arraignment.

On May 13, 1985, a pretrial hearing was arranged before Magistrate Pepe to consider several pending motions. At this hearing, Krzyske moved to appoint lay counsel to represent him, and based this motion on his belief that the Constitution guarantees him the right to "counsel"; not necessarily an attorney. Krzyske maintained that he would not be as well represented by an attorney as by his friends because lawyers were not as familiar with his tax protest

views and because they were inclined to be unsympathetic toward his cause. The magistrate denied his motion, but informed him he had the right to a court-appointed attorney if he could show he was indigent.[1] He was also told he could represent himself. Krzyske refused to file an affidavit of indigency but continued to assert his right to lay counsel at the proceedings through briefs and argument. He also objected to continuing pretrial proceedings without the help of such counsel.

Krzyske's trial began June 14, 1985, and he began the day by objecting to any proceedings he would have to defend without assistance of counsel. He stated that if he could not be assisted by a nonlawyer, he would consider accepting the help of a court-appointed attorney. The government objected that Krzyske had failed to properly request court-appointed counsel by filing an affidavit of indigency, though he had been told of these requirements by Magistrate Pepe. The United States Attorney claimed that it was too late for Krzyske to obtain a lawyer, and that this was merely an attempt to delay his trial. Krzyske claimed he needed a lawyer to fill out the indigency affidavit to ensure he was not waiving any right to privacy in doing so. Judge Joiner ruled that under the circumstances the trial should proceed with Krzyske appearing *pro se*. When Krzyske later renewed his objection to proceeding without an attorney, Judge Joiner again denied his request for an attorney because there was no evidence that he was unable to afford one.[2]

Following the jury's verdict but before sentencing, Krzyske appeared and requested that an attorney be appointed for him. The judge again refused to appoint an attorney because he concluded Krzyske was not indigent, but nevertheless postponed the sentencing hearing for a week to allow him to find a lawyer. This time Krzyske returned with an attorney and has since been represented by counsel.

Krzyske makes two related arguments concerning his representation at trial. First, he contends that he was not given enough time to obtain a lawyer following the magistrate's refusal to appoint nonlegal counsel.[3] Second, he claims his constitutional rights were violated when, on the first day of trial, the court refused to appoint an attorney to assist him in filling out an affidavit of indigency. He asserts that he needed a competent attorney to help him fill out this form because he feared the information could have been used against him by the prosecution, and claims it is error to require a waiver of his fifth amendment right to silence in exchange for his sixth amendment right to counsel. These arguments amount to a claim that Krzyske never waived his right to counsel, and was prejudiced by his appearance in court without one.

The government responds that Krzyske was fully aware of and knowingly waived his right to counsel, that he never intended to be represented by a lawyer, and that his objections at trial were an attempt to delay the proceedings; a tactic not allowed by federal courts. The government finally asserts that all of the trouble surrounding appointment of counsel was Krzyske's at-

---

1. Krzyske was an employee of Krzyske Bros. Co. during this time and was paid a regular salary.

2. Despite all Krzyske's objections, the record shows that he was assisted in preparing for trial by Donald Kostyo, a non-lawyer.

3. During oral argument on appeal, defendant's counsel indicated that the district court's denial of Krzyske's request for lay counsel was not a basis for the appeal. We do not consider this issue in view of defendant's concession. We are satisfied, nonetheless, that defendant's position was not otherwise supported by persuasive authority. *See, e.g., United States v. Tedder,* 787

F.2d 540, 543 (10th Cir.1986); *United States v. Hoffman,* 733 F.2d 596, 599 (9th Cir.), *cert. denied,* 469 U.S. 1039, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984); *United States v. Young,* 578 F.2d 216, 217 (8th Cir.1978); *United States v. Wilhelm,* 570 F.2d 461, 465 n. 9 (3d Cir.1978); *United States v. Irwin,* 561 F.2d 198, 200 (10th Cir.1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978); *United States v. Buttorff,* 572 F.2d 619, 627 (8th Cir.), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978). *Compare United States v. Whitesel,* 543 F.2d 1176 (6th Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977).

tempt to manufacture grounds for reversal on appeal.

■ The important right to counsel of choice is not absolute; it must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court. *See Lockett v. Arn,* 740 F.2d 407, 413 (6th Cir.1984), *cert. denied,* — U.S. ——, 106 S.Ct. 3332, 92 L.Ed.2d 738 (1986); *United States v. Fowler,* 605 F.2d 181, 183 (5th Cir.1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980).

■ Waiver occurs when the record shows that an accused was reasonably offered counsel but understandingly rejected the offer. *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962); *United States v. Grosshans,* 821 F.2d 1247 (6th Cir.1987). A litigant cannot play a "cat and mouse game" with the court in order to preserve an issue for appeal or to delay proceedings. *See United States v. Romero,* 640 F.2d 1014, 1016 (9th Cir.1981); *Relerford v. United States,* 309 F.2d 706, 707 (9th Cir.1962); *United States v. Weninger,* 624 F.2d 163 (10th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). "The right to assistance of counsel does not imply the absolute right to counsel of one's choice ... [but] must be balanced against the need for the efficient and effective administration of criminal justice." *Weninger,* 624 F.2d at 166. In *Weninger* the defendant was found to have had a reasonable opportunity to obtain counsel during the two months before trial:

> The record as a whole indicates that, although Weninger was made "aware of the dangers and disadvantages of self-representation," *Faretta* [*v. California* ], 422 U.S. [806] at 835, 95 S.Ct. [2525] at 2541, 45 L.Ed.2d 562, he strategically chose to appear *pro se.* However, after the jury refused to uphold his patriotic protest against the federal income tax, Weninger retained counsel to contend on appeal that the conduct of his trial was constitutionally impermissible. We refuse to permit this type of game to be played with the courts. We hold that Weninger's stubborn failure to hire an attorney constituted a knowing and intelligent waiver of the right to assistance of counsel.

*Id.* at 167. We are convinced that Krzyske did waive his right to counsel under all the circumstances.

An excerpt from his opening statement on the first day of trial implies that Krzyske had knowledge that he was given a reasonable opportunity to retain counsel:

> You'll notice that no one is with me at my table. No one's here to represent me. This is because of a few different things. First of all, I could not afford one, but the judge had mentioned if I could not afford one that I could have a court appointed attorney. But at that time I was thinking about it, and he said you're going to have to come back here and fill out these forms.
>
> . . . .
>
> I've decided again not to take that attorney because I didn't want to fill out all those forms. Another reason why I didn't want to accept an attorney is because I felt that he is going to be beholding to my adversary. He's paid by the U.S. Government. He's part of the same law school that the U.S. Attorney is.
>
> I questioned myself deeply because of this, maybe because I'd be incompetent in what I'm doing here by representing myself. But I had to make that decision, and it was a hard one.
>
> I did have counsel that was not a member of the bar, and the judge instructed me that I could not have a person that's not a member of the bar. So I can't have that person here.
>
> I'm not blaming the judge for this because I feel that he has to do what the law requires, and that's what he feels the law requires. So I can't fault him for that.

We believe that the record indicates that defendant from the outset intended to represent himself, or to have a lay person sympathetic to his views represent him. The evidence before the trial court was the Krzyske considered himself knowledgeable

in tax affairs and had been receiving a regular and substantial income from a family business. *See United States v. Weninger*, 624 F.2d 163 (10th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed. 2d 470 (1980); *United States v. Romero*, 640 F.2d 1014, 1016 (9th Cir.1981).

■ Even if Krzyske did decide to seek counsel following his meeting with the magistrate, we conclude he had enough time to seek an attorney and still be effectively represented. Krzyske had at least three days to seek a lawyer after the magistrate refused to appoint lay counsel on May 13. Had he done so, his attorney could have come into court, advised the judge that he was newly appointed, and likely have procured a continuance if valid grounds were presented. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Linton v. Perini*, 656 F.2d 207, 212 (6th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982). For almost four years before trial, moreover, defendant was aware that he was under criminal investigation and he had almost 60 days from arraignment until trial in which to hire his own attorney or properly to seek a court-appointed attorney.

The magistrate orally denied defendant's motion for non-licensed counsel on May 13, 1985. The district court first denied defendant's objection to the magistrate's refusal for a lay person representation on May 24. The second order of the district court denied the request on June 10. We conclude that defendant had a reasonable opportunity to retain counsel and his sixth amendment rights were not violated by the court's refusal to appoint counsel until Krzyske completed the requisite sworn information. *See United States v. Fowler*, 605 F.2d 181, 183 (5th Cir.1979), *cert. denied*, 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed. 2d 785 (1980); *United States v. Casey*, 480 F.2d 151, 152 (5th Cir.), *cert. denied*, 414 U.S. 1045, 94 S.Ct. 550, 38 L.Ed.2d 336 (1973); *United States v. Mitchell*, 354 F.2d 767, 769 (2d Cir.1966).

In finding Krzyske's time reasonable we are guided by the following test set forth in *Linton:*

"What is a reasonable delay necessarily depends on all the surrounding facts and circumstances. Some of the factors to be considered in the balance include: the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience of the litigants, witnesses, counsel and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in an identifiable prejudice to defendant's case, and if so, whether the prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case."

*Id.* at 210 (quoting *United States v. Burton*, 584 F.2d 485, 490–91 (D.C.Cir.1986)). Applying the *Linton* factors in this case, the district court properly concluded that Krzyske was given a reasonably sufficient time to secure counsel.

Finally, we find that it was proper for the district court to refuse to appoint counsel until Krzyske proved his indigency. In *United States v. Harris*, 707 F.2d 653 (2d Cir.), *cert. denied*, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983), the court held it was not error for the district court to find no indigency where the defendant declined to supply additional information to the court unless the proceedings were held *in camera* and without the government's participation. The *Harris* court denied defendant's request because "the speculative possibility of inadequate protection of defendant's fifth amendment rights is outweighed by the need to determine facts through adversarial proceedings." *Id.* at 663. The court also noted that

[w]e have held that "the government should not be permitted to use as part of its direct case any testimony given by a defendant at a hearing where he is seeking *forma pauperis* relief or the assignment of counsel on the ground of his financial inability to ... afford counsel," ... and that holding is directly applicable to the case before us.

*Id.* at 662–63 (citations omitted). We are in accord with the rationale of *Harris.* We also agree with the holding in *United States v. Peister,* 631 F.2d 658 (10th Cir. 1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981), which stated:

The burden is on the defendant to demonstrate financial inability in order to obtain counsel. *United States v. Ellsworth,* 547 F.2d 1096 (9th Cir.), *cert. denied,* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 247 (1977). We hold defendant should not be relieved of this burden when any conflict with the Fifth Amendment right is speculative and prospective only. The time for protection will come when, if ever, the government attempts to use the information against the defendant at trial. We are not willing to assume that the government will make such use, or if it does, that a court will allow it to do so.

*Id.* at 662.

While there is authority to the contrary, the circumstances of this case lead us to the conclusion that Krzyske's constitutional rights were not violated with respect to his proceeding to trial without appointed counsel.[4] We conclude that the district judge properly allowed Krzyske to go to trial unassisted by counsel.

## II.

■ Defendant contends a portion of the jury instruction on willfulness was erroneous and prejudicial. He asserts that the instruction combines and confuses the element of willfulness with the element of an attempt to evade the tax. Krzyske also objects to the instructions the judge gave the jury when they requested more information on "willfulness." He concedes that he did not object to the instructions at the time, but contends that under Fed.R.Crim. P. 52(b) it should now be considered. Defendant also argues that the definitiion of wilfulness given was prejudicial and erroneous because it indicates that "willfulness" is established from the willful failure to file a tax return, or filing a false withholding exemption certificate.

We begin our consideration of this claim by remembering that "jury instructions in a criminal case should not be analyzed in isolation, but rather must be evaluated in the context of the overall charge." *United States v. Gray,* 790 F.2d 1290, 1297 (6th Cir.1986), *reversed on other grounds sub nom. McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); *see also United States v. Mahar,* 801 F.2d 1477, 1498 (6th Cir.1986). Krzyske's assertions that the jury instructions, both initial and supplemental, confused "willfulness" with the element of "an attempt to evade or defeat" the tax are without merit. The questioned instructions properly distinguish the elements of acting "deliberately" and "attempting to evade or defeat" the tax at issue. A fair reading of all jury instructions shows that the district court divided the elements of the crime into separate parts, discussing individually concepts of "willfulness" and "attempt to evade or defeat a tax" and "intent." The court instructed, among other things, that the

only way to arrive at the intention of the defendant in this case is for you to take into consideration all of the facts and circumstances as shown by the evidence, including the exhibits, and determine from such facts and circumstances whether it was the intent of the defendant at the times in question to evade or defeat his income tax responsibilities to the United States.

The judge noted that the United States offered evidence to the effect that Krzyske both failed to file income tax returns for four consecutive years, and filed false and fraudulent W–4 forms. He also instructed

---

4. Although the trial judge did not make inquiry into defendant's financial condition on the first day of trial, he later found that Krzyske enjoyed an annual average income of $20,000.

that a pattern of behavior may be considered in determining whether the defendant intentionally attempted to evade and defeat the tax for the years charged in the indictment.

We find the jury charge, considered in its totality, did not create a substantial likelihood that the defendant was erroneously convicted of a crime not alleged in the indictment and that the instructions were not erroneous and prejudicial.

■ Defendant contends that the "willfulness" definition under the felony statute must be distinguished from "willfulness" under the misdemeanor section. However, a series of Supreme Court decisions nullify this claim. In *Spies v. United States*, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943), the Court noted that the "difference between willful failure to pay a tax when due, which is made a misdemeanor, and willful attempt to defeat and evade one, which is made a felony, is not easy to detect or define." *Id.* at 497, 63 S.Ct. at 367. The Court went on to say:

> [I]n employing the terminology of attempt to embrace the gravest of offenses against the revenues, Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors. Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony.

*Id.* at 499, 63 S.Ct. at 368.

In *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), the Court refined *Spies* by finding that if there is a disputed issue of fact as to the existence of the requisite affirmative commission under § 7201 in addition to the § 7203 omission, a defendant would be entitled to a lesser-included offense charge based on § 7203. *Sansone* further held that:

> it is undisputed that petitioner filed a tax return and that the petitioner's filing of a false tax return constituted a sufficient affirmative commission to satisfy that requirement of § 7201. The only issue at trial was whether petitioner's act was willful.... This being so, on the authorities cited, it is clear that petitioner was

not entitled to a lesser-included offense charge based on § 7203.

380 U.S. at 351–52, 85 S.Ct. at 1010.

In *United States v. Bishop*, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973), the Court interpreted *Sansone* to foreclose "the argument that the word 'willfully' was to be given one meaning in the tax felony statutes and other meaning in the tax misdemeanor statutes." *Id.* at 356, 93 S.Ct. at 2015. In a footnote the Court stated:

> Semantic confusion sometimes has been created when courts discuss the express requirement of an "attempt to evade" in § 7201 as if it were implicit in the word "willfully" in that statute. This type of analysis produces language suggesting that "willfully" in § 7201 has a different meaning from the same term in § 7203.... This Court may be somewhat responsible for this imprecision because a similar analysis was employed in *Spies v. United States*, 317 U.S. 492, 497–499 [63 S.Ct. 364, 367, 87 L.Ed. 418] (1943). Greater clarity might well result from an analysis that distinguishes the express elements, such as an "attempt to evade," prescribed by § 7201, from the uniform requirement of willfulness.

*Id.* at 360 n. 8, 93 S.Ct. at 2017 n. 8 (citations omitted).

Finally, in *United States v. Pomponio*, 429 U.S. 10, 12–13, 97 S.Ct. 22, 23–24, 50 L.Ed.2d 12 (1976), the Court definitively defined willfulness under the Revenue Code as "a voluntary, intentional violation of a known legal duty" and held that a good faith instruction is unnecessary. Thus, the Supreme Court has clarified that willfulness is the same under either statute.

Krzyske was convicted under § 7201. The indictment alleged that he willfully attempted to evade and defeat income tax due for the year 1978 by filing a tax return indicating his income to be $384.40, when his actual income was $13,842.67. The government contended that he owed an income for that year of $940.50.

Upon considering the jury instruction as a whole in light of these decisions, we find the instructions as to "willfulness" were not erroneous, and that his conviction under this count withstands his challenge on appeal.

**III.**

The trial court denied defendant's request to instruct the jury on his asserted doctrine of jury nullification. The court also denied the government's motion to prohibit the use of this term during the proceedings and, as a result, Krzyske mentioned the doctrine of jury nullification in his closing argument. During its deliberation the jury asked the court what the doctrine stood for. The court responded, "There is no such thing as valid jury nullification. Your obligation is to follow the instructions of the Court as to the law given to you. You would violate your oath and the law if you willfully brought in a verdict contrary to the law given you in this case." Defendant objected and claims it was error for the court to so instruct the jury.

Krzyske defines jury nullification as a jury's power to return a verdict of not guilty despite law and facts indicating guilt under the indictment. Krzyske acknowledges at the same time that no federal court has yet specifically permitted a jury nullification instruction and that few courts have even permitted arguments to the jury on the topic urging this "doctrine." He claims that this case is unique because the court specifically told the jury that there is no such thing as valid jury nullification.

■ We recently addressed the question of jury nullification in *United States v. Avery*, 717 F.2d 1020 (6th Cir.1983), *cert. denied*, 466 U.S. 905, 104 S.Ct. 1683, 80 L.Ed.2d 157 (1984), in the following terms:

Defendant's final contention is that the district court committed reversible error when it refused to instruct the jury that it had the power to acquit the defendant even though he was guilty of the charged offense. The instruction itself reads that "a jury is entitled to acquit the defendant because it has no sympathy for the government's position."

This argument is completely without merit. Although jurors may indeed have the power to ignore the law, their duty is *to* apply the law as interpreted by the court and they should be so instructed.

*Id.* at 1027 (citations omitted). A jury's "right" to reach any verdict it wishes does not, however, infringe on the duty of the court to instruct the jury only as to the correct law applicable to the particular case.

■ The right of a jury, as a buffer between the accused and the state, to reach a verdict despite what may seem clear law must be kept distinct from the court's duty to uphold the law and to apply it impartially. This has been recognized by the Supreme Court in *Horning v. District of Columbia*, 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920), where Justice Holmes stated, "[T]he jury has the power to bring in a verdict in the teeth of both law and facts. But the judge always has the right and duty to tell them what the law is upon this or that state of facts...." This directive has been recognized by this court in *United States v. Burkhart*, 501 F.2d 993, 996–97 (6th Cir.1974), where we approved a district court's instruction that the jury consider only the facts and law before them. In light of *Horning, Avery,* and *Burkhart,* we are compelled to approve the district court's refusal to discuss jury nullification with the jury. To have given an instruction on nullification would have undermined the impartial determination of justice based on law.

Thus, we find no merit in the defendant's objection concerning the court's instructions to the jury.

**IV.**

Based on the analysis above, we AFFIRM the district court in all respects.

MERRITT, Circuit Judge, dissenting.

I disagree with the Court's disposition of this case. I would reverse the case and remand it for a new trial. It is clear to me that the District Court erred in responding to the jury's specific question concerning "jury nullification" raised after several hours of jury deliberation. The jury returned to the courtroom concerned about the issue of "jury nullification." The jury wanted to know to what extent it had the right to acquit the defendant because it disagreed with the government's prosecution. It wanted to know what was meant by the idea of "jury nullification." The Court responded by telling the jury that it had no power to engage in jury nullification and that was the end of the matter. It told the jury in effect that it had no general authority to veto the prosecution. This is simply error. The Court should have explained the jury's function in our system. Our Court has made it clear in the past

that the jury does have veto power and the jury should have been so instructed. For example, in *United States v. Wilson*, 629 F.2d 439, 443 (6th Cir.1980), in an opinion which I wrote for a unanimous panel we stated:

> In criminal cases, a jury is entitled to acquit the defendant because it has no sympathy for the government's position. It has a general veto power, and this power should not be attenuated by requiring the jury to answer in writing a detailed list of questions or explain its reasons. The jury's veto power was settled in *Throckmorton's* case in 1544 according to Professor Plucknett:
>
> In Crompton's treatise on the jurisdiction of courts (1594) we read:
>
> "Note that the London jury which acquitted Sir Nicholas Throckmorton, Knight, about the first year of Queen Mary, of high treason, was called into the Star Chamber in October, 1544 (sic), forasmuch as the matter was held to have been sufficiently proved against him; and eight of them were there fined in great sums, at least five hundred pounds each, and remanded back to prison to dwell there until further order were taken for their punishment. The other four were released, because they submitted and confessed that they had offended in not considering the truth of the matter."

\* \* \*

Throckmorton's prominent share in Wyatt's rebellion put his guilt beyond the slightest question, but he was a protestant hero to the Londoners, and the jury's verdict was purely political. From now onwards the jury enters on a new phase of its history, and for the next three centuries it will exercise its power of veto on the use of the criminal law against political offenders who have succeeded in obtaining popular sympathy. Plucknett, A Concise History of The Common Law 133–34 (5th ed. 1956).

The District Court gave short shrift to this legal tradition and made no effort to explain to the jury its historical role as the protector of the rights of the accused in a criminal case. Our Court unfortunately has done no better.

I would reverse the case and remand it for a new trial with instructions that the Court advise the jury, if requested, concerning the jury's "general veto power," in accordance with the *Wilson* case and the historical prerogatives of the jury to return a general verdict of not guilty.

### ON REHEARING

MERRITT, Circuit Judge, dissenting. For the reasons stated in my panel dissent, I would grant en banc rehearing on the "jury nullification" issue. The law is settled that the jury has the power to decide against the law and the facts. The jury specifically asked about its power to do so, and was told by the District Court that it had no such power. The least that the jury should have been told was "the jury has the power to bring in a verdict in the teeth of both law and facts … the technical right, if it can be called so, to decide against the law and the facts….." *Horning v. District of Columbia*, 254 U.S. 135, 138–39, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920). These were the words of Justice Holmes speaking for the Court. The Supreme Court has never taken these words back or indicated that they do not properly state the law. The District Court and our Court are simply refusing to apply these words because they do not agree with them. It is not our prerogative to overrule the Supreme Court.