DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pickaway County Common Pleas Court judgment of conviction and sentence. Harold C. Harmon, the defendant below and the appellee herein, pled guilty to: (1) three counts of tampering with records, in violation of R.C. 2913.42; (2) three counts of forgery, in violation of R.C. 2913.31; (3) one count of possessing criminal tools, in violation of R.C. 2923.34; and (4) twenty-five counts of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323.
 {¶ 2} Appellant raises the following assignments of error for review:
First Assignment of Error:
"The trial court abused its discretion by denying the appellant's motion to withdraw his guilty plea prior to sentencing."
Second Assignment of error:
"The appellant's constitutional rights were violated when the trial court refused to allow him to discharge his retained counsel."
 {¶ 3} On June 6, 2003, the Pickaway County Grand Jury returned an indictment charging the appellant with: (1) five counts of gross sexual imposition; (2) three counts of tampering with records; three counts of forgery; (3) one count of possessing criminal tools; and (4) twenty-five counts of illegal use of a minor in nudity-oriented material or performance. Appellant pled not guilty.
 {¶ 4} The trial court set the case for trial on December 15, 2003. On that date, however, appellant's counsel advised the court that he had a trial conflict. Appellant's counsel further informed the court that in October, he and the prosecution attempted to resolve the matter and that he had relayed the information to the appellant. Since then, he has been waiting for a response from the appellant. Appellant apparently attempted to call his counsel during the weekend, but could not reach him. Counsel told the court that he "think[s] it is accurate to indicate that [appellant] is completely overwhelmed by this. He also indicated some frustration with [counsel's] representation, and [appellant] may wish the court to appoint him counsel." Appellant's counsel informed the court that "[he] ha[s] indicated to [appellant] if he does in fact wish new counsel, he could fill out an application, an affidavit of indigency, and the decision is placed up to the court. Perhaps the easiest way to handle that is to leave me on as counsel of record until the court has had an opportunity to review that application, and if rejected, then I will remain as counsel of record until some other action takes place."
 {¶ 5} The court then asked the appellant whether his counsel's account of the situation was "correct." Appellant replied "yes." The court stated:
"Well, for the record, the court has not received any affidavit from Mr. Harmon requesting a court appointed counsel. Mr. Allen obviously is the attorney of record and will continue in that capacity until otherwise removed, if that happens, by the court. The court, based upon the defendant's request, therefore will order the matter continued."
 {¶ 6} In a December 31, 2003 letter, the appellant advised his counsel that he needed to terminate his services. Appellant's counsel then filed a motion to withdraw. On January 8, 2004 the court held a hearing regarding the matter. Appellant's counsel informed the court: "Under the disciplinary rules, once informed that I had been terminated by my client, I believe withdrawal is mandatory and I filed the appropriate motion."
 {¶ 7} The court then asked the appellant "what the problem is between [him] and [counsel]." Appellant responded: "Well, I don't feel I have had time to even sit and talk about the case in detail. I just want to make sure that my side is heard." The court explained:
"I am confident it would be. Let me explain to you, because you are not perhaps that familiar with court proceedings, but this court handles about 280 of these cases a year, one judge, okay. And you do the mathematics, it doesn't take long to figure 280 cases, individuals going through here a year, I've got to keep these cases moving. When I have somebody who I think is using the system to stall, that upsets me, and I don't know what the problem is. I granted a continuance the last time, okay, that we were here. We cleared this date when everybody was here with your attorney, Mr. Allen, because it was represented to me that you had decided you wanted to keep Mr. Allen at that time, so this court again rescheduled the matter * * * for purposes of allowing you to have your day in court. * * *."
 {¶ 8} The court stated that it would not continue the case and advised the appellant that he had until January 12, 2004 to prepare for trial. The court denied the appellant's motion to withdraw counsel, noting that the appellant would not be able to find an attorney to take the case and be prepared to try it in that short amount of time.
 {¶ 9} On January 9, 2004, the parties advised the court that they had reached a plea agreement to dismiss the five gross sexual imposition counts in exchange for appellant's guilty plea to the remaining twenty-three counts. The prosecution also agreed to recommend a ten-year prison sentence. Appellant's counsel agreed with the prosecution's recitation of the agreement and stated that he advised the appellant of his rights and any possible defenses.
 {¶ 10} The court then advised the appellant that by pleading guilty, he would waive his rights to a jury trial, to cross-examine witnesses, to present a defense, to use the subpoena power, and to present witnesses. The court further informed the appellant that by pleading guilty, he would be admitting the truth of the allegations. In response, the appellant stated that: (1) he understood his rights; (2) he understood the nature of the charges; (3) he entered his pleas voluntarily; and (4) no one threatened him or promised him anything in exchange for his guilty plea. The court then accepted the appellant's guilty plea.
 {¶ 11} On January 28, 2004, appellant, with new counsel, filed a motion to withdraw his guilty plea. He claimed, in essence, that he did not knowingly, intelligently, and voluntarily enter his guilty plea because (1) he received ineffective assistance of counsel; and (2) his blood sugar was low on the date he entered his plea.
 {¶ 12} On March 10, 2004, and continuing on June 18, 2004, the trial court held a hearing regarding the appellant's motion to withdraw his guilty plea. Appellant's new counsel argued that the court should permit the appellant to withdraw his plea because: (1) prior counsel performed deficiently; (2) the appellant was not allowed to discharge his prior counsel; and (3) the appellant's blood sugar was 42, "approaching the level of being comatose." Appellant's counsel asserted that the appellant "really didn't know what he was doing." He complained about the extent of the dialogue between the court and appellant:
"In the Rule 11 hearing [appellant] only speaks ten words. He says yes, sir, fourteen times, no sir, two times, and I have some college, and guilty, sir. That is the only communication between [appellant]. He is just answering. There is nothing in the Rule 11 hearing where [appellant] is asked, are you represented by Mr. Lon Allen? Have you re-hired him? What is the status? Are you happy with him? Never inquired into.
So [appellant] is in court, confused, not understanding what he is doing there."
 {¶ 13} Appellant's counsel asserted that the prosecution would not suffer prejudice if the court allowed the appellant to withdraw his plea. The prosecution claimed, however, that it would suffer prejudice:
"We have got a 13 year old kid who was told he didn't have to gear up and get ready to testify, that this plea deal was done. And that is what worries the state about this matter. * * * And so I just want to make it clear for the record, what the state does consider to be harm, and the harm is a 13 year old victim granted five counts of F-1 to be dismissed. If the motion is granted, those five counts are back on the table, and obviously then he's got to be prepared to go forward again."
 {¶ 14} After hearing counsels' arguments, the trial court rejected the appellant's claim that his guilty plea was based upon ineffective assistance of counsel and overruled the remaining part of his motion to withdraw his guilty plea. The court found that the appellant knowingly, intelligently, and voluntarily entered into the plea.
 {¶ 15} On June 22, 2004, the trial court sentenced appellant. Appellant filed a timely notice of appeal.
 {¶ 16} I {¶ 17} In his first assignment of error, the appellant asserts that the trial court abused its discretion by denying his Crim.R. 32.1 presentence motion to withdraw his guilty plea. He raises several arguments to support his assertion that the court should have permitted him to withdraw his plea: (1) defense counsel did not provide him with competent representation; (2) the court did not engage the appellant in a meaningful Crim.R. 11 dialogue; and (3) the appellant's low blood sugar on the date he entered his guilty plea left him unable to fully appreciate and understand the proceedings.
 {¶ 18} Appellant claims that trial counsel rendered ineffective assistance of counsel and a reasonable probability exists that appellant would not have pled guilty but for counsel's alleged ineffectiveness. Appellant cites the following as counsel's faults: (1) counsel did not meet with him often enough; (2) counsel did little to investigate the charges; (3) counsel did not identify all potential constitutional challenges; (4) counsel did not prepare a defense; (5) counsel did not request a more specific bill of particulars; (6) counsel did not investigate an alibi defense; (7) counsel did not consider the absolute defense that the nudity-oriented photographs of minors were not images of actual children, which is not a crime under Ashcroft v. The Free SpeechCoalition (2002), 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403; (8) counsel did not challenge the search of appellant's premises where law enforcement officers seized the physical evidence; (9) counsel did not raise the issue of the proper protocol used for interviewing the alleged childvictim or the need to employ an expert to evaluate the childvictim's statements; and (10) counsel did not investigate whether the appellant could have been guilty of a lesser offense under R.C. 2907.323(A)(3), which is a fifth degree felony, rather than R.C. 2907.323(A)(1).
 {¶ 19} Appellant further asserts that the Crim.R. 11 hearing was deficient. He notes that the plea hearing occurred one day after he attempted to discharge his counsel. He notes that the record shows only his "mechanical" responses and that his low blood sugar left him unable to knowingly, intelligently, and voluntarily plead guilty.
 {¶ 20} "A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea."[1] State v. Xie (1992), 62 Ohio St.3d 521,584 N.E.2d 715, paragraph one of the syllabus; see, also, State v.Spivey (1998), 81 Ohio St.3d 405, 415, 692 N.E.2d 151.
 {¶ 21} The decision to grant or to deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court. Xie, at paragraph two of the syllabus. Thus, a reviewing court will not reverse a trial court's decision to deny a motion to withdraw a guilty plea absent an abuse of discretion. Xie, 62 Ohio St.3d at 527, citing State v. Adams (1980), 62 Ohio St.2d 151, 157. We note that an abuse of discretion connotes more than an error of judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. See, e.g., Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. In applying the abuse of discretion standard of review, a reviewing court is not free to merely substitute its judgment for that of the trial court. See, e.g., In re Jane Doe I (1991), 57 Ohio St.3d 135, 137-138, citing Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 22} In reviewing whether a trial court abused its discretion in deciding the defendant's motion to withdraw a guilty plea, we must apply the following factors: "(1) whether the accused was represented by highly competent counsel; (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea; (3) whether a full hearing was held on the withdrawal motion; and (4) whether the trial court gave full and fair consideration to the motion." State v. McNeil (2001),146 Ohio App.3d 173, 176, 756 N.E.2d 885, citing State v. Peterseim
(1980), 68 Ohio App.2d 211, 214, 428 N.E.2d 863; State v.Littlefield, Ross App. No. 03CA2747, 2004-Ohio-5996, at ¶ 9. In addition, the following factors are helpful in determining whether a trial court abused its discretion: "(1) whether the motion was made within a reasonable time; (2) whether the motion set out specific reasons for the withdrawal; (3) whether the accused understood the nature of the charges and the possible penalties; and (4) whether the accused was perhaps not guilty or had a complete defense to the charges." McNeil,
citing State v. Fish (1995), 104 Ohio App.3d 236, 240, 661 N.E.2d 788. A change of heart or mistaken belief about pleading guilty is not a reasonable basis that requires a trial court to permit the defendant to withdraw his guilty plea. State v. Lambros (1988), 44 Ohio App.3d 102,103, 541 N.E.2d 632.
 {¶ 23} In the case at bar, we believe that the trial court did not abuse its discretion by refusing to allow the appellant to withdraw his guilty plea. The record reflects that: (1) the appellant was represented by highly competent counsel; (2) the trial court the afforded the appellant a full Crim.R. 11 hearing before he entered his plea; (3) the trial court held a full hearing on the appellant's Crim.R. 32.1 motion; (4) the trial court gave full and fair consideration to the Crim.R. 32.1 motion; and (5) the appellant understood the nature of the charges and the possible penalties.
 {¶ 24} To the extent that the appellant asserts that his counsel was not competent and rendered ineffective assistance of counsel, we note that the trial court dismissed his ineffectiveness claims. We conclude that the record demonstrates that trial counsel fully investigated the charges and, in his professional judgment, a plea agreement with the prosecution provided the best resolution. Nothing in the record suggests that trial counsel rendered anything less than highly competent assistance.
 {¶ 25} Additionally, the trial court complied with Crim.R. 11 when it accepted the appellant's guilty plea.[2] The transcript discloses that the appellant knowingly, intelligently, and voluntarily entered his plea. Appellant stated on the record that (1) he voluntarily entered his guilty plea; (2) he understood the nature of the charges and the penalties involved; (3) he understood the rights he waived by pleading guilty; and (4) he consulted with trial counsel before entering his guilty plea and that he understood all of his rights and defenses. Even though the appellant's responses were short, limited to a few words, nothing in Crim.R. 11 requires defendants to express themselves in lengthy responses. Instead, the focus is whether a defendant understands the consequences of pleading guilty. This can be accomplished with simple "yes" and "no" responses.
 {¶ 26} We also disagree with appellant's assertion that his low blood sugar rendered him unable to understand the consequences of his guilty plea. Appellant did not inform anyone, including his counsel or the court, that he felt incapable of comprehending the proceedings or the consequences of pleading guilty. Medical conditions or physical disorders, including diabetes, do not necessarily render a criminal defendant incapable of knowingly, intelligently, and voluntarily pleading guilty. See State v. Crump (Feb. 11, 1982), Cuyahoga App. Nos. 43621 and 43622. Further, the appellant did not present any evidence that his low blood sugar left him incapable of understanding the consequences of pleading guilty.
 {¶ 27} We also disagree with the appellant's assertion that he may have been not guilty of the charges under Free Speech Coalition, supra. In that case, the United States Supreme Court determined that a provision of the Child Pornography Prevention Act of 1996, which prohibited any visual depiction that "is, or appears to be, of a minor engaging in sexually explicit conduct," is unconstitutional. Id. at 258; see18 U.S.C. 2256(8)(B) (1997). The Court reasoned that the statute was overbroad because it criminalized depictions in which children were not exploited in the production process, such as the creation of computer generated children or the use of child-like, but overage, actors. Id. at 250-55.
 {¶ 28} In the case sub judice, the appellant complains that children depicted in the items he possessed perhaps were not actual children. Those items are not in the record, however, and we have no way to independently evaluate his claim. See, generally, State v. Stalnaker, 9th Dist. No. 21731, 2004-Ohio-1236, at ¶¶ 8-9. Furthermore, we presume that trial counsel would have recognized that the children depicted were not actual children and would have raised the defense had the argument been legitimate.
 {¶ 29} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II {¶ 30} In his second assignment of error, the appellant contends that the trial court violated his Sixth Amendment right to counsel when it refused to allow him to discharge his retained attorney. He complains that the court did not fully inquire into his reasons for wanting to terminate his attorney's services and that it did not advise him that he could represent himself or hire substitute counsel.
 {¶ 31} The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.
"[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."
 {¶ 32} Wheat v. United States (1988), 486 U.S. 153, 159, 108 S.Ct. 1692,100 L.Ed.2d 140. The Sixth Amendment right to counsel "does not guarantee that a criminal defendant will be represented by a particular attorney."Caplin Drysdale v. United States, 491 U.S. 617, 624, 109 S.Ct. 2646,105 L.Ed.2d 528 (1989). "[T]he important right to counsel of choice is not absolute; it must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court."United States v. Krzyske (C.A.6, 1988), 836 F.2d 1013, 1017.
 {¶ 33} A defendant bears the burden to provide grounds for the appointment of new counsel. See State v. Carter (1998),128 Ohio App.3d 419, 423, 715 N.E.2d 223, 225; State v. Bomar (Oct. 23, 2000), Scioto App. No. 00CA2703. If a defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make that inquiry part of the record. Bomar; see, also, State v. King (1995), 104 Ohio App.3d 434, 437,662 N.E.2d 389, 390-391. The inquiry may be brief and minimal, but it must be made. Carter; King. Even that limited judicial duty arises only if the allegations are sufficiently detailed and specific. Vague or general objections do not trigger the duty to investigate further.Carter. The decision to appoint new counsel then rests with the sound discretion of the trial court. Id.; see, also, State v. Hendking (Feb. 3, 2000), Cuyahoga App. Nos. 75179 75180; State v. Smith (Dec. 29, 1998), Lawrence App. No. 98CA12.
"Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include `the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.' United States v. Jennings (C.A.6, 1996), 83 F.3d 145,148. In addition, courts should `balanc[e] * * * the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.' Id."
 {¶ 34} State v. Jones (2001), 91 Ohio St.3d 335, 342-343,744 N.E.2d 1163.
 {¶ 35} In the case sub judice, we believe that the trial court did not abuse its discretion by denying the appellant's request to discharge his retained trial counsel. First, the appellant sought to discharge his retained trial counsel less than two weeks before the trial date. Appellant's counsel filed the motion to withdraw and brought the matter to the court's attention four days before trial. Thus, the appellant did not raise this issue in the most timely fashion. The trial court reasonably could have decided that appellant's decision to discharge his counsel was a delay tactic. See State v. Cox (May 23, 1997), Trumbull App. No. 95-T-5279. Second, the court adequately inquired into the appellant's complaint. Appellant, when provided the opportunity, did not point to any specific breakdown between him and his trial counsel. Instead, he simply stated that he did not feel that his side of the case was being heard. Third, nothing in the record shows that any conflict existed between appellant and his counsel that resulted in a total lack of communication. In fact, the record shows that appellant's trial counsel relayed a plea offer to appellant in October of 2003, but that the appellant did not respond. Thus, the lack of communication appears to be attributed to appellant's failure to communicate with his counsel.
 {¶ 36} Moreover, we disagree with the appellant that the trial court possessed a duty to advise him that he could represent himself. A "trial court has no affirmative duty to inform a defendant that he has aSixth Amendment right of selfrepresentation which he could have asserted during trial when, even though the defendant indicates that he is dissatisfied with counsel, [defendant] does not indicate that he wishes to represent himself." State v. Bagley (Oct. 15, 1996), Franklin App. Nos. 96APA04-554 and 96APA05-614; State v. Scott (September 29, 1988), Franklin App. No. 88AP-346; State v. Reed (July 16, 1999), Lucas App. No. L-98-1367. In the case at bar, the appellant did not advise the court that he wished to defend himself. Thus, the trial court did not have a duty to advise the appellant that he could proceed without counsel and represent himself.
 {¶ 37} We also disagree with the appellant that the trial court deprived him of his Sixth Amendment right to counsel by failing to advise him that he could seek substitute counsel. At the December 15, 2003 hearing (first scheduled trial date), appellant's retained counsel informed the court that he had told the appellant what procedure he would need to follow if he wanted the court to appoint substitute counsel. No evidence exists in the record to establish that the appellant followed or complied with that procedure.
 {¶ 38} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. McFarland, J.: Concur in Judgment Opinion.
[1] Crim.R. 32.1 provides:
"A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."
[2] Crim.R. 11 provides in pertinent part:
(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.