JUDGMENT: AFFIRMED
{¶ 1} In this case, Defendant-Appellant Deondre Vaughn pleaded guilty and was convicted on one count of rape, one count of abduction and, in a separate case, one count of permitting drug abuse. He now appeals the orders of the trial court denying his motion to withdraw his guilty plea and refusing his counsel's request to withdraw. He also challenges the sufficiency of his plea hearing and argues that the trial court erred in classifying him as a sexual predator. We find that the trial court committed no error warranting reversal. Accordingly, we affirm the judgment of the trial court in all respects.
 {¶ 2} In Case No. 455113, the state charged Vaughn with two counts of rape, felonies of the first degree, in violation of R.C. 2907.02, with sexually violent predator specifications under R.C. 2941.148; two counts of kidnapping, felonies of the first degree, in violation of R.C.2905.01, with sexually violent predator specifications and sexual motivation specifications under R.C. 2941.147; and one count of attempted rape, a felony of the second degree, in violation of R.C.2923.02/2907.02, also with a sexually violent predator specification. This indictment arose from an incident in which Vaughn allegedly abducted a thirteen-year-old girl as she rode a bicycle or walked[1]
near his home, brought her inside his home, locked the home's front door to prevent her escape and forcibly raped her.
 {¶ 3} In Case No. 455203, the state charged Vaughn with one count of permitting drug abuse, in violation of R.C. 2925.13; one count of possessing criminal tools, in violation of R.C. 2923.24; and one count of having a weapon while under a disability, in violation of R.C.2923.13. All three counts were felonies of the fifth degree. This indictment arose from an incident in which Vaughn allegedly drove a companion (and future co-defendant) around in his car as the companion sold or attempted to sell drugs.
 {¶ 4} Both cases were transferred to the same common pleas judge for disposition. Vaughn initially retained private defense counsel, but he terminated that relationship in August 2004, and counsel withdrew. The County Public Defender's office then assumed representation of Vaughn for both of his pending cases. Defense counsel appeared for twelve pretrial conferences, engaged in appropriate discovery, and unsuccessfully opposed the state's motion to compel the submission of Vaughn's saliva sample to be used in DNA testing.[2] Counsel for the parties discussed the possibility of a plea agreement on several occasions. The parties appeared for a scheduled trial date of April 6, 2005, and the state requested a continuance until May 2, 2005, due to the victim's unavailability. On the record, Vaughn requested that the trial court appoint him new counsel. Vaughn claimed he wanted to proceed to trial, whereas his counsel was attempting to negotiate a plea deal against his wishes. Denying Vaughn's request, the trial court found that his lawyer was representing him competently and Vaughn had stated no justifiable cause for the appointment of new counsel.
 {¶ 5} The case came for trial on the rescheduled date, and the parties selected a jury. The next day, with trial about to begin, the state outlined its final plea offer: in Case No. 455113, Vaughn would plead guilty to one count of rape, a first-degree felony, and one count of abduction, a third-degree felony, which was a charge reduced from one of the kidnapping counts in the indictment. All other counts and specifications in Case No. 455113 would be nolled, and the matter would be set for sentencing and a hearing to determine Vaughn's sexual offender classification. In addition, the state would require Vaughn to plead guilty to one count of permitting drug abuse, a fifth-degree felony, in Case No. 455203; all other counts of that indictment would be nolled. Vaughn ultimately agreed, and the trial court took the pleas accordingly.
 {¶ 6} On July 13, 2005, Vaughn's lawyer filed a motion to permit Vaughn to withdraw his previously entered guilty pleas and to assign him new counsel. On the previously scheduled date of July 22, 2005, the court heard, and denied, the motion on the record and then proceeded to the sexual offender classification hearing and sentencing. The court designated Vaughn as a sexual predator and sentenced him to eight years imprisonment on the rape charge, one year on the abduction charge and six months on the permitting drug abuse charge, all sentences to run concurrently. He now appeals in four assignments of error.
 {¶ 7} In his first assignment of error, Vaughn states:
 THE TRIAL COURT ERRED IN NOT PERMITTING MR. VAUGHN TO WITHDRAWAL (sic) HIS PRIOR GUILTY PLEA PRIOR TO SENTENCING.
 {¶ 8} Crim.R. 32.1 provides:
 A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.
 {¶ 9} Generally, a presentence motion to withdraw a guilty plea is to be freely and liberally granted. State v. Xie (1992), 62 Ohio St.3d 521,526, 584 N.E.2d 715. However, a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. Id. at paragraph one of the syllabus. Rather, "[a] trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." Id. The Xie court further held that "[t]he decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." Id. at paragraph two of the syllabus. Accordingly, in order to find that the trial court abused its discretion, a reviewing court must find that the court's ruling was "unreasonable, arbitrary or unconscionable." Id. at 527.
 {¶ 10} In State v. Fish (1995), 104 Ohio App.3d 236, 661 N.E.2d 788, the First Appellate District set forth a non-exhaustive list of factors to weigh in considering a motion to withdraw a plea:
 (1) whether the prosecution would be prejudiced if the plea was vacated; (2) whether the accused was represented by highly competent counsel; (3) whether the accused was given a full Crim.R. 11 hearing; (4) whether a full hearing was held on the motion; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the motion was made within a reasonable time; (7) whether the motion set forth specific reasons for the withdrawal; (8) whether the accused understood the nature of the charges and possible penalties; and (9) whether the accused was perhaps not guilty or had a complete defense to the crime.
Id. at 240.
 {¶ 11} A change of heart or mistaken belief about pleading guilty is not a reasonable basis for requiring a trial court to permit the defendant to withdraw his guilty plea. State v. Lambros (1988),44 Ohio App.3d 102, 103, 541 N.E.2d 632. Every motion to withdraw a guilty plea necessarily includes a "change of heart"; a mere change of heart, therefore, without some additional justification, is not a sufficient ground for the withdrawal of a guilty plea, especially when the defendant has become aware that the sentence is likely to be greater than was anticipated at the time of the plea. Id.
 {¶ 12} At hearing, Vaughn's counsel stated that Vaughn wished to withdraw his guilty pleas because he misunderstood or counsel misled him regarding the penalties he would face in pleading guilty. The plea hearing, however, was a model of clarity, in that the judge discussed in detail with Vaughn, on the record, the possible penalties for each of the charges he was to plead to. She also made it unmistakably clear that it was within the range of possible penalties that she would make her decision. Furthermore, there was no agreement or promise regarding how much prison time he would ultimately receive.[3]
 {¶ 13} Counsel also argued that after entering his plea, Vaughn decided that his admissions of guilt did not accurately reflect his perceived level of culpability in the events underlying his indictments. The level of culpability, however, is an intrinsic part of the level of felony of each crime to which he pleaded guilty. His argument, therefore, must be deemed a "change of heart," which is no basis for allowing a defendant to withdraw a guilty plea. State v. Lambros, supra.
 {¶ 14} Finally, counsel asserted that Vaughn wished to withdraw his guilty plea because he might have felt pressured or coerced into making the pleas, with trial looming, by his father or stepfather, or by counsel's urging to take the plea. Specifically, defense counsel argued:
 I think that more than likely what happened in this case is that after he took the plea, which was a long time in the making-I know the Court was generous enough to allow his father and stepfather to have time to talk him into this at length about what he was going to do. I think that in retrospect he felt that he was pressured and coerced either by them or by me or by both because of the severity of the situation. And once he got back to his cell, and upon reflection, realized that he's looking at anywhere between 3 and 15 years for something that he doesn't feel accurately reflects his involvement in this case, which I think is the most important thing.
Tr. 46. This argument, in and of itself, is speculative and vague. More importantly, Vaughn did not participate at the hearing and his counsel did not submit evidentiary materials in support of his conclusory argument. This assignment of error fails on this basis alone. This court has previously held: "However, a valid reason behind the withdrawal of a guilty plea may be that a defendant was coerced into pleading guilty by the state, the court or defense counsel. To make this claim, an appellant must submit supporting material containing evidence that the guilty plea was induced by false promises. State v. Kapper (1983),5 Ohio St.3d 36, 448 N.E.2d 823." State v. Thomas, Cuyahoga App. No. 85294, 2005-Ohio-4145 at ¶ 5.
 {¶ 15} Moreover, plea negotiations were ongoing throughout this case: for example, the state placed plea proposals on the record in early April 2005, when trial was continued because of the unavailability of the victim. Although the proposals offered on that date were not the same as the arrangement Vaughn ultimately accepted, he cannot seriously argue that he was somehow coerced into accepting a deal he had no time to consider before trial. That the state required Vaughn to make a decision whether to accept the state's plea proposal or proceed immediately to trial is not coercive conduct; nothing mandated that the state make any offer at all, especially considering Vaughn's prior rejections of previous offers. Further, during his plea hearing, he explicitly confirmed to the court that no threats or promises had been made to him in order to influence his decision to plead as he did.
 {¶ 16} Therefore, the trial court did not abuse its discretion in denying Vaughn's motion to withdraw his guilty plea. Accordingly, this assignment of error is overruled.
 {¶ 17} In his second assignment of error, Vaughn claims:
 THE TRIAL COURT ERRED WHEN IF (sic) DID NOT PROVIDE MR. VAUGHN WITH SUBSTITUTE TRIAL COUNSEL.
 {¶ 18} The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. An indigent defendant has a right to competent representation by his court-appointed attorney, but he has no right to have a particular attorney represent him, and must demonstrate "good cause" to warrant substitution of court-appointed counsel. State v. Coleman, Montgomery App. No. 19862, 2004 Ohio 1305, ¶ 23. The right to counsel must be balanced against the court's authority to control its docket, as well as its awareness that a "demand for counsel may be utilized as a way to delay the proceedings or trifle with the court." United States v.Krzyske (C.A.6 1988), 836 F.2d 1013, 1017; see, also, State v.Murphy, 91 Ohio St.3d 516, 523, 2001 Ohio 112, 747 N.E.2d 765. Accordingly, if, after an inquiry, the trial court finds a defendant's grievances unfounded or unreasonable, it may still require the trial to proceed without substitution of counsel. State v. Dykes, Cuyahoga App. No. 86148, 2005-Ohio-6636 at ¶ 10.
 {¶ 19} Hostility, disagreement over trial tactics, tension, or personal conflicts between attorney and client are insufficient to justify a change in appointed counsel when they do not interfere with the preparation and presentation of a competent defense. Dykes, supra, ¶ 25. In order to demonstrate the good cause necessary to warrant removing court-appointed counsel and substituting new counsel, defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize defendant's Sixth Amendment right to effective assistance of counsel. State v. Coleman (1988),37 Ohio St.3d 286, 292, 525 N.E.2d 792; State v. Murphy, 91 Ohio St.3d 516, 523,2001-Ohio-112, 747 N.E.2d 765.
 {¶ 20} An appellate court reviews a trial court's denial of a substitution of counsel under an abuse of discretion standard. State v.Cowans, 87 Ohio St.3d 68, 73, 1999-Ohio-250, 717 N.E.2d 298. Hence, an appellate court will not reverse a trial court's decision regarding a substitution of counsel absent a showing that the trial court's decision was unreasonable, arbitrary or unconscionable. State v. Hancock,108 Ohio St.3d 57, 77, 2006-Ohio-160, 840 N.E.2d 1032. Moreover, we are not free to merely substitute our judgment for that of the trial court.State v. Dykes, supra, citing In re Jane Doe I (1991),57 Ohio St.3d 135, 566 N.E.2d 1181.
 {¶ 21} Vaughn first raised the issue of his dissatisfaction with his appointed counsel's performance on the record on April 6, 2005. He addressed the trial court as follows:
 I never asked him for no deal. Ever since he's been my lawyer, I been asking him to go to trial. And it seems like every time I address him with something, or tell him something, he always tells me like "it don't make no difference." And I just don't feel comfortable with him.
Tr. 8.
 That's not the only reason why. That's not the only reason. He's been arguing with my mother and all kinds of stuff, man. Excuse me.
 I don't feel like he's got my best interest. Ever since I been telling him, I want to go to trial, he wants to take a deal. And for what? I ain't — I didn't rape nobody. I didn't. And he ain't looking into nothing I tell him. We supposed to be scheduled for trial today, and he just called witnesses yesterday, and he ain't interviewed nobody. He tells me, he called witnesses. And then when I talk to the witnesses, they say he ain't called them. And he ain't talked to them, or nothing like that. So, I feel like he ain't really working for me.
Tr. 9-10.
 {¶ 22} Preliminarily, we note that this exchange with the trial court occurred on April 6, 2005; the court ultimately continued trial to May 2, 2005, so any allegation that Vaughn's counsel was not prepared for trial in April would not carry much weight later. Rather, it seems Vaughn and defense counsel simply differed on what was the appropriate strategy to pursue and what Vaughn's likely probability of success at trial would be. Vaughn " cannot * * * contend that the Constitution reserves the selection of trial strategy to [his] personal choice. Decisions about `the viability of certain defenses' are `within the exclusive province of defense counsel to make after consultation with his client.' Lewis v. Alexander (C.A.6, 1993), 11 F.3d 1349, 1354."State v. Murphy, 91 Ohio St.3d 516, 524, 2001-Ohio-112, 747 N.E.2d 765.
 {¶ 23} Here, Vaughn points to no actual evidence that his counsel did not competently investigate potential defense theories or prepare his case and be ready, should it have proceeded to trial. In the absence of such evidence, "[a] reviewing court must presume that a properly licensed attorney executes his legal duty to competently represent the client." State v. Smith (1985), 17 Ohio St.3d 98, 100, 477 N.E.2d 1128. Because competent representation, as opposed to sympathetic representation or representation conforming to the preferences of the defendant, is what the Constitution commands, the trial court committed no error in denying appointed counsel's motion to withdraw upon the above-stated grounds.
 {¶ 24} Vaughn also asserts that he should have had alternate counsel appointed in this case because of an incident that occurred on May 3, 2005, as the parties were engaged in plea negotiations. The state's position throughout the negotiation was that, were Vaughn to strike a plea deal at all, he would have to plead in such a way as to resolve both Case Nos. 455113 and 455203 and that he would not be offered the opportunity to plead to counts in one case and stand trial on the other. When defense counsel communicated the state's requirement to Vaughn and urged him to accept what the state offered, Vaughn allegedly called him "a dirty mother fucker,"[4] at which point counsel ended the conversation and left the room. Vaughn now asserts that this exchange represents a breakdown in communication between him and his counsel of sufficient magnitude to represent a denial of counsel, such that new counsel should have been appointed. We disagree.
 {¶ 25} The above exchange took place as the parties were readying for trial and a jury had already been empaneled. We cannot say that one heated comment from Vaughn to his counsel, as well as counsel's disengagement from an unpleasant conversation, evinces the type of communication breakdown that would prevent counsel from representing Vaughn in keeping with his Sixth Amendment rights.
 {¶ 26} Accordingly, the trial court did not abuse its discretion in denying trial counsel's motion to withdraw, and this assignment of error is overruled.
 {¶ 27} In his third assignment of error, Vaughn claims:
 MR. VAUGHN'S PLEA WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY MADE WHERE THE TRIAL COURT FAILED TO ADVISE MR. VAUGHN THAT HE HAS THE CONSTITUTIONAL RIGHT TO TESTIFY IN HIS OWN DEFENSE.
 {¶ 28} In this assignment of error, Vaughn argues that his guilty pleas were constitutionally invalid because, during his colloquy with the court, he was not personally advised by the court that he was waiving his right to testify in his own defense in pleading guilty and forgoing trial. We disagree.
 {¶ 29} Vaughn's argument is that because the right to testify is a fundamental constitutional right, and because the court did not personally advise him of this right, his pleas were not voluntary, knowing, or intelligent. The United States Supreme Court, however, has delineated those specific fundamental constitutional rights that a court must personally advise a defendant he is waiving. They include the defendant's "* * * privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers."Boykin v. Alabama, (1969), 395 U.S. 238, 243, 23 L.Ed.2d 274,89 S.Ct. 1709 . It is this discrete group of rights that a court must personally make sure that a defendant knows he is relinquishing. Id.[5] InState v. Ip, Cuyahoga App. No. 86243, 2006-Ohio-2303, this court held that a trial court need not specifically advise a criminal defendant who pleads guilty that he is giving up the right to testify on his own behalf as a result of his plea, because Ohio's Crim.R. 11(C) does not expressly command it. Id. at ¶ 30-31.[6]
 {¶ 30} Ohio's Crim.R. 11 is a rule created to ensure that the constitutionally required plea advisements as set out in Boykin,supra, are given to each defendant who pleads guilty to a felony. SeeLibretti v. United States, (1995), 516 U.S. 29, 49-50, 116 S.Ct. 356,133 L.Ed.2d 271: Federal Rule 11(c) "(* * * `codifies * * * the requirements of Boykin v. Alabama, 395 U.S. 238, 23 L.Ed. 2d 274,89 S.Ct. 1709 * * * (1969), which held that a defendant must be apprised of the fact that he relinquishes certain constitutional rights by pleading guilty')."
 {¶ 31} Ohio's Crim.R. 11(C)(2)[7] provides, in relevant part, as follows:
 In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 * * *
 (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the State to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.
As to the constitutional rights listed in Crim.R.11(C)(2), an appellate court reviews a defendant's plea colloquy for strict compliance with the rule. State v. Nero (1990), 56 Ohio St.3d 106, 564 N.E.2d 474; State v.Higgs (1997), 123 Ohio App.3d 400, 704 N.E.2d 308. It is not disputed that below, the court strictly complied with Crim.R. 11(C)(2)(c), in advising Vaughn of the relevant constitutional rights he was waiving in pleading guilty as he did. Tr. 36-37.
 {¶ 32} Generally, Vaughn is correct in asserting that a defendant's right to testify in a criminal trial is regarded both as a fundamental and a personal constitutional right that is waivable only by an accused. See, e.g., Rock v. Arkansas (1987), 483 U.S. 44, 107 S.Ct. 2704,97 L.Ed.2d 37. The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is a right that is "'essential to due process of law in a fair adversary process'" and thus falls under the protections of the Fifth andFourteenth Amendments. Rock at 51, quoting Faretta v. California, (1975),422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562. The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call "witnesses in his favor"-which, of course, would include himself. Rock at 52 (citation omitted). In addition, the right to testify is "a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." Id.
 {¶ 33} However, the right to testify is not announced by Boykin v.Alabama as crucial for a defendant to know in ensuring the validity of his plea, and it is a right that is exercised only after a defendant, in consultation with his attorney, decides to put the prosecution to its proof at trial. Apart from the plea process, it is the primary duty of criminal defense attorneys to ensure that their clients understand the existence of this right and the wisdom of exercising it as a matter oftrial strategy when a defendant actually goes to trial. As the Ohio Supreme Court has explained,
 [Ohio c]ourts of appeals have held that a trial judge is not required to conduct an inquiry with the defendant about the decision whether to testify. See, e.g., State v. Oliver (1995), 101 Ohio App. 3d 587, 656 N.E.2d 348. In fact, most courts have ruled that neither the United States Constitution nor applicable rules require the trial judge to ask the defendant about the decision not to testify. See, e.g., Artuz, 124 F.3d at 78; State v. Walen
(Minn. 1997), 563 N.W.2d 742; State v. Gulbrandson (1995), 184 Ariz. 46, 64, 906 P.2d 579, 597; Phillips v. State (1989), 105 Nev. 631, 632-633, 782 P.2d 381, 382; Aragon v. State
(1988), 114 Idaho 758, 762-763, 760 P.2d 1174, 1178-1179; Commonwealth v. Hennessey (1987), 23 Mass. App.Ct. 384, 387-390, 502 N.E.2d 943, 945-948. We agree and hold that a trial court is not required to conduct an inquiry with the defendant concerning the decision whether to testify in his defense.
 Reasons vary for rejecting the requirement. Such an inquiry is thought to be simply unnecessary. Alternatively, it may be thought harmful. As Chief Justice Erickson of the Colorado Supreme Court noted, an inquiry "unduly interferes with the attorney-client relationship." People v. Curtis (Colo. 1984), 681 P.2d 504, 519 (concurring opinion). An inquiry "places the judge between the lawyer and his client and can produce confusion as well as delay." Underwood v. Clark (C.A.7, 1991), 939 F.2d 473, 476. For example, questioning can lead into the judge's evaluation of the wisdom of the defendant's decision, the substance of the testimony, or simply evoke a dramatic change in a previously carefully considered trial strategy. See, e.g., United States v. Goodwin (C.A.7, 1985), 770 F.2d 631, 636. "Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right." Brooks v. Tennessee (1972), 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358, 364.
State v. Bey, 85 Ohio St.3d 487, 499, 1999-Ohio-283, 709 N.E.2d 484.
 Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. * * * This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is "strongly presumed to have rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." Strickland v. Washington, 466 U.S. 668, 688-90, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).
United States v. Webber, 208 F.3d 545, 550-551 (6th Cir. 2000).
 {¶ 34} Specifically in reference to the plea process, the United States Supreme Court has made clear that, should a defendant relinquish a constitutional right outside the confines of Crim.R. 11(C) because of counsel's ineffective assistance in urging him to plead guilty, "[a] failure by counsel to provide advice may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea." United States v.Broce, (1989), 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927,. Here, however, there is no dispute that the trial court complied with Crim.R.11(C) in taking Vaughn's plea.
 {¶ 35} Accordingly, although we urge that the better practice may well be for the trial court to clarify at plea hearings that the "right to testify" is among those constitutional rights waived when criminal defendants plead guilty and forgo trial, this assignment of error is overruled.
 {¶ 36} In his fourth assignment of error, Vaughn claims: THE TRIAL COURT'S CONCLUSION THAT MR. VAUGHN IS A
 SEXUAL PREDATOR IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 {¶ 37} "In order to be classified as a sexual predator, a defendant must have been convicted of or pled guilty to committing a sexually oriented offense. The state then must prove by clear and convincing evidence that the offender is likely to engage in the future in one or more sexually oriented offenses." State v. Hayes, No. 83515,2004-Ohio-4491, ¶ 6, (internal quotations omitted) citing State v.Namestnik, Cuyahoga App. No. 82228, 2003-Ohio-4656, at ¶ 7, quotingState v. Eppinger, 91 Ohio St.3d 158, 163, 2001-Ohio-247,743 N.E.2d 881. See R.C. 2950.01(E) and 2950.09(B)(3).
 Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.
State v. Eppinger, 91 Ohio St.3d 158, 164, 2001-Ohio-247,743 N.E.2d 881, citing Cross v. Ledford (1954), 161 Ohio St. 469, 477,53 Ohio Op. 361, 364, 120 N.E.2d 118, 123.
 {¶ 38} When an individual challenges the sufficiency of the evidence, we must determine whether the evidence satisfies the threshold necessary to support a finding by clear and convincing evidence. State v.Taylor, Cuyahoga App. No. 79475, 2002-Ohio-1554. Under this standard, we review the evidence in the light most favorable to the state to determine whether any rational factfinder could have concluded, by clear and convincing evidence, that Vaughn was likely to commit future sexual offenses. State v. Padgett, Cuyahoga App. No. 83162, 2004-Ohio-2159, at ¶ 6.
 {¶ 39} In determining whether a defendant is a sexual predator, the trial court must consider certain factors set forth in R.C.2950.09(B)(2). Those factors include the following:
 (a) The offender's or delinquent child's age;
 (b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 (d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 (e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender or delinquent child;
 (h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct." Id.
 {¶ 40} The Supreme Court of Ohio has stated that these factors serve as "guidelines" to assist judges in determining whether a defendant who committed a sexually oriented offense is a sexual predator. State v.Thompson, 92 Ohio St.3d 584, 587, 2001-Ohio-1288, 752 N.E.2d 276. Further, these guidelines do not control a judge's discretion; rather, a judge is required to "consider all relevant factors" including, but not limited to, those listed in R.C. 2950.09(B)(2). Id. The statute does not indicate what weight, if any, a judge must assign to each factor. Id. at 588. As the Supreme Court of Ohio reasoned, "[s]uch an interpretation makes sense because determining recidivism is at best an imperfect science and while the guidelines set forth potentially relevant factors, some may not be applicable in every case." Id. Accordingly, "'the trial court should consider the statutory factors listed in [R.C.2950.09(B)(2)], and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism.'" Id., quoting State v. Eppinger,91 Ohio St.3d at 166.
 {¶ 41} The sexual offender notice, reporting, and verification requirements under Chapter 2950 are remedial and do not constitute punishments. See State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291,700 N.E.2d 570, certiorari denied (1999), 525 U.S. 1182, 119 S.Ct. 1122,143 L.Ed.2d 116; State v. Williams, 88 Ohio St.3d 513, 528-532,2000-Ohio-428, 728 N.E.2d 342, certiorari denied, 531 U.S. 902,121 S.Ct. 241, 148 L.Ed.2d 173 (notice provisions of R.C. Chapter 2950 are neither criminal nor punitive); State v. Hayden, 96 Ohio St.3d 211,2002-Ohio-4169, 773 N.E.2d 502; State v. Brown (Oct. 19, 1998), Warren App. Nos. CA98-03-034, CA98-04-046, CA98-05-059, (sexual predator law does not constitute punishment and is regulatory, rather than punitive in nature).
 {¶ 42} In this case, following the required H.B. 180 hearing, the trial court adjudicated Vaughn a sexual predator. At the hearing, counsel for both parties discussed the underlying circumstances of the sexual offenses alleged in Case No. 455113. The state referenced a sexual predator evaluation and Static-99 psychological test administered by a clinical psychologist.[8] In addition, counsel discussed the presentence investigation report prepared by the Cuyahoga County Probation Department. This report contained a summary of Vaughn's juvenile and adult criminal history, as well as summaries of the police report narrative description of the underlying events and Vaughn's version of events as told to police.
 {¶ 43} The police report summary alleges that a police dispatcher received a call for assistance on the night of May 3, 2004, when the caller reported the rape of a thirteen-year-old girl. Police responded to the scene. The victim claimed that Vaughn, who lived down the street from her, accosted her as she walked by his home, removed her coat and refused to give it back. He then grabbed her by the arm, compelled her by force into his home, locked its front door so she could not leave, removed her pants and undergarments, and forcibly, vaginally raped her. Warning her not to tell anyone what he had done, Vaughn then permitted the victim to dress and leave. The victim ran crying to her younger sister and another family friend. Upon hearing what happened, the victim's mother and stepfather drove their car to the group, and all went back to Vaughn's home, where the stepfather confronted Vaughn and another young man with him outside the home. A fight ensued, and the victim and her parents left the scene and returned home. EMS personnel arrived and transported the victim to a hospital, where she was examined and a rape kit exam was performed.
 {¶ 44} Vaughn claimed that the victim was a neighborhood acquaintance with whom he had sex on two prior occasions. He stated that he did not know the victim's age. According to Vaughn, the victim, after performing a strip-tease dance for some neighborhood men in a nearby backyard, willingly accompanied him to his home, where she again performed a nude dance for him. Vaughn attempted to initiate sexual contact, which the victim playfully rebuffed. Trying again, he began to have intercourse with the victim. At some point, he noticed that she was crying, discontinued sexual contact, and allowed the victim to dress and leave. He stated that a short time later, the victim's stepfather came to his home and the two fought. Vaughn denied forcing the victim to either enter his home or have sexual relations with him.
 {¶ 45} After hearing the arguments of the parties, the trial court noted the ages of Vaughn (twenty-one) and the victim (thirteen) at the time of the offense. The court also detailed Vaughn's criminal history, which included seven non-sexually-oriented criminal charges as a juvenile. Vaughn also was charged in three felony drug cases as an adult, and was sentenced to prison on two of them, for a total sentence of three years.
 {¶ 46} Accordingly, evaluating the negative impact, cumulatively, of the age of the offender, the offender's extensive criminal history, the age of the victim and the prior prison terms served by the offender, along with the catch-all provision examining the offender's behavioral characteristics, the trial court adjudicated Vaughn to be a sexual predator under R.C. 2950.09(B)(3).
 {¶ 47} From this record, we find clear and convincing evidence that Vaughn was likely to commit future sexual offenses. State v.Padgett, Cuyahoga App. No. 83162, 2004-Ohio-2159, at ¶ 6. We have explained in the past that the youth of an offender and his sexual crime victim, combined with an offender's lengthy criminal history showing general disregard of the law, can provide a basis for adjudicating the offender a sexual predator. In State v. Quinones, Cuyahoga App. No. 83720, 2004-Ohio-4485, we said,
 Even though Quinones' age makes one hope for rehabilitation, the psychiatric report states that offenders of his age present a greater likelihood of committing future sexual offenses, and his record shows a history of criminal behavior. Therefore, the evidence is sufficient to conclude that he presents the type of risk that the registration requirements of R.C. Chapter 2950 were intended to address.
Further, we find it significant that Vaughn, an adult, patently fails to appreciate the criminality inherent in having sexual relations with a thirteen-year-old girl, whether consensual or not. His failure to fundamentally recognize this fact provides a strong indicator that the probability of similar conduct occurring in the future, should the opportunity present itself, is quite real.
 {¶ 48} This assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. MCMONAGLE, J., and PATRICIA A. BLACKMON, J., CONCUR.
[1] The record contains descriptions of the incident relating either that the victim walked or rode a bicycle past Vaughn's home when she was abducted. While this discrepancy is unresolved, it ultimately does not present a factual issue important to the resolution of the case.
[2] The results of DNA testing indicated that Vaughn and the victim did engage in sexual conduct. Ultimately, Vaughn justified his sexual relations with the victim as consensual.
[3] Because Vaughn pleaded guilty to one count of rape, a felony of the first degree, a mandatory prison term of three years was the minimum term that the trial court could impose. At the plea hearing, the trial court explicitly stated that there was no possibility of avoiding prison by pleading guilty to this offense.
[4] Tr. 25.
[5] In addition, the Ohio Supreme Court has held that a defendant's right "to compulsory process of witnesses to testify on his behalf," is also among those constitutional rights that a pleading defendant must personally waive in his plea colloquy with the trial court. State v.Ballard (1981), 66 Ohio St.2d 473, 473-477, 423 N.E.2d 115.
[6] I reluctantly follow the precedent established in State v.Ip, supra, but continue to believe that the right of a criminal defendant to testify at his trial is a fundamental one recognized by the United States Supreme Court in Rock v. Arkansas, supra, and, as such, a trial court should personally advise a pleading defendant of the right. See State v. Ip, supra, Karpinski, J., concurring in part and dissenting in part.
[7] Notably, Fed. Crim.R. 11(b)(1)(E), as amended in 2002, commands Federal courts to advise defendants pleading guilty that they are waiving "the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses." While this change does not recognize the fundamental nature of the "right to testify," in the context of a plea hearing in Federal cases, the State of Ohio has not made this change or recognized the need to advise a defendant of his fundamental right to testify before taking a valid plea, either in Rule 11 or case law. The criminal rules of procedure are derived from, and comport with, U.S. and Ohio Supreme Court precedent. While the Federal Rule 11 amendment now includes the "right to testify" as an enumerated right, this acknowledgment does not create Federal law binding on state courts, and does not affect the result reached here. Currently, Boykin v. Alabama, supra, still controls in terms of what Federal constitutional rights need to be discussed at a plea hearing in order to establish the validity of the plea. The Ohio Supreme Court has also expanded the list of those fundamental rights that a trial court must personally discuss with a defendant pleading guilty in a criminal case in State v. Ballard, supra. See footnote 5.
[8] The actual evaluation document is not in the record on appeal. However, the trial court ultimately did not base its adjudication of Vaughn on anything discussed in the report.