[Cite as *State v. Swogger*, 2025-Ohio-1003.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Robert G. Montgomery, P.J. |
| Plaintiff - Appellee | : | Hon. Kevin W. Popham, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| GEORGE H. SWOGGER | : | Case No. 24CA00093 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas of Stark County, Case No.
                                2024-CR-0370

JUDGMENT:                       Affirmed

DATE OF JUDGMENT:               March 21, 2025

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

Kyle L. Stone                           Douglas C. Bond
Prosecuting Attorney                    116 Cleveland Ave. N.W., Suite 600
Christopher A. Piekarski                Canton, Ohio 44702
Assistant Prosecuting Attorney
110 Central Plaza South, Suite 510
Canton, Ohio 44702

*Gormley, J.*

{¶1}   Defendant George Swogger appeals the judgment of the Stark County Court of Common Pleas, where he was found guilty on a felony charge of domestic violence.  Though he contends that his conviction was not supported by the evidence and that the trial judge erred by refusing to appoint substitute counsel, we find otherwise and now affirm.

**Facts and Procedural History**

{¶2}   Swogger and his girlfriend, J.H., lived together on the eighth floor of an apartment complex in Canton, Ohio.  In February 2024, Swogger's cousin visited Swogger and J.H. at their apartment to watch the Super Bowl together.  At some point during the night, J.H. left the apartment to visit with a friend of hers who lived downstairs on the seventh floor.

{¶3}   J.H. later returned to her apartment on the eighth floor and was immediately confronted by Swogger. He accused her of performing oral sex downstairs and he called her a "bitch" and a "whore."  J.H. turned her back to Swogger and began to walk away. As she did so, Swogger, with a closed fist, punched J.H. in the back of the neck.  The punch caused J.H. to fall to the floor, and Swogger proceeded to strike her 30 to 40 additional times while she was lying on the ground.  J.H. lost consciousness as a result of the attack.  At some point that night, J.H. regained consciousness and returned to her bed where Swogger had fallen asleep.

{¶4}   J.H. woke up the following morning for an appointment with a case manager with whom she regularly met for therapy sessions.  At that appointment, she told her manager about what had happened to her the previous night, and he strongly urged her

to go to the hospital.  J.H. agreed to go, so she called her dad and asked him to pick her up.  At the hospital, J.H. described what Swogger had done to her to a forensic nurse and an on-duty police officer.

{¶5}    The hospital staff performed an examination of J.H. and that examination revealed that she had sustained multiple injuries.  Approximately five months before the incident with Swogger, J.H. had a metal plate and screws installed into the C4 and C5 vertebrae of her cervical spine to stabilize her neck because she suffered from spinal stenosis.  When she was examined at the hospital after the incident with Swogger, the metal plate and screws had been loosened.  Hospital staff also noted that J.H. had a sprained wrist, knots on her head, redness around her left eye socket, and bruising along her legs.  J.H. testified that, after the incident, she suffered from blurry vision, memory loss, and severe migraines.

{¶6}    Swogger was indicted on one felonious-assault charge and one domestic-violence charge.  At his jury trial, Swogger was convicted on the third-degree-felony domestic-violence charge, but he was acquitted on the felonious-assault charge.  Swogger now appeals.

## Swogger's Conviction Was Supported by Sufficient Evidence

{¶7}    In his first assignment of error, Swogger argues that the jury did not have sufficient evidence to convict him on the domestic-violence charge.

{¶8}    "When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'"  *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d

259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Howell*, 2020-Ohio-174, ¶ 28 (5th Dist.), quoting *Jenks* at paragraph two of the syllabus. A "verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶9} To convict Swogger of domestic violence, the state was required to introduce evidence that Swogger "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." R.C. 2919.25(A). A "household member" under the statute includes "[a] spouse, a person living as a spouse, or a former spouse" who "is residing or has resided with the offender[.]" R.C. 2919.25(F)(1)(a)(i). The domestic-violence charge against Swogger also required the state to prove that Swogger had at least two previous domestic-violence convictions on his criminal record. R.C. 2919.25(D)(1)(4).

{¶10} The state introduced evidence of all elements of the offense. J.H. testified that, at the time of the incident, she and Swogger shared a home and had lived together since 2018. She testified that Swogger punched her in the back of the neck — knocking her to the ground — and struck her 30 to 40 additional times while she was lying on the floor. She also testified about the numerous injuries that she suffered because of Swogger's actions. Swogger stipulated that he had at least two prior domestic-violence convictions.

**{¶11}** Swogger argues that J.H.'s testimony was not credible and should not have been believed by the jury. Whether a witness's testimony should have been believed, however, is an issue of weight. In a sufficiency challenge, "a victim's testimony alone can be sufficient to prove domestic violence." *State v. Puchowicz*, 2024-Ohio-5766, ¶ 27 (11th Dist.); a*ccord State v. Casey*, 2024-Ohio-689, ¶ 17 (12th Dist.) (noting "the well-settled principle that the victim's testimony, standing alone, is sufficient to support a domestic violence conviction"). J.H.'s testimony, if believed, established all the elements of domestic violence under R.C. 2919.25(A).

**{¶12}** We conclude, after reviewing the record, that the jury was presented with sufficient evidence to convict Swogger of domestic violence. Swogger's first assignment of error is overruled.

**Swogger's Conviction Was Not Against the Manifest Weight of the Evidence**

**{¶13}** In his second assignment of error, Swogger argues that his domestic-violence conviction was against the manifest weight of the evidence.

**{¶14}** "In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the 'thirteenth juror,' and after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶15}** "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *State v. Butler*, 2024-Ohio-4651, ¶ 75 (5th

Dist.). "'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" (Bracketed text in original.) *State v. Williams*, 2024-Ohio-5578, ¶ 61 (5th Dist.), quoting *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984). "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

**{¶16}** Testimony at trial created a conflict in the evidence regarding who caused the injuries to J.H. After the state rested its case, Swogger called Daniel Ott — the manager of the apartment complex where Swogger and J.H. lived at the time of the alleged incident — to testify. Ott testified that, on the day after the alleged incident, he received a phone call from J.H. That phone call, he claims, was an inadvertent "pocket dial" from J.H. that allowed Ott to hear a fight between J.H. and a woman known in the local area as "Chocolate."

**{¶17}** Ott testified that he had previously banned Chocolate from entering the building because she is a prostitute who brings drugs with her. Both Swogger and J.H. had been paid by Ott to remove Chocolate from the building whenever she entered. Ott testified that, from the pocket dial, he could hear J.H. say: "oh, you're not," followed by Chocolate saying: "girl, I'm going to beat your ass." After this, Ott reported that he heard a violent scuffle break out between the two women until the call abruptly ended a few seconds later. Swogger argued to the jury that this alleged fight between J.H. and Chocolate was the cause of J.H.'s injuries.

**{¶18}** The jury did not, however, lose its way in finding J.H.'s testimony more credible. J.H.'s testimony was more consistent with her injuries, and it required the jury to make fewer inferences. The metal plate and screws in J.H.'s cervical spine had been loosened, and she had sustained numerous injuries to her head and body. J.H.'s testimony about what Swogger did to her directly corresponded to these injuries. Ott's testimony, in contrast, described the alleged fight between J.H. and Chocolate as a "scuffle." Without more, however, the jury was required to speculate as to how that scuffle caused such severe injuries to J.H.

**{¶19}** The jury also did not lose its way in disregarding Ott's testimony. Our review of the record finds many irregularities in his testimony that could give a jury a rational basis to discredit it. The alleged phone call somehow dropped after only a few seconds, and Ott did not attempt to call J.H. back, despite hearing that someone who had been banned from the building was trespassing and fighting with a resident. Ott was also unable to find the alleged phone call in his phone's call history, and he was unable to retrieve the footage on the day of the alleged phone call from the security cameras installed in the building's lobby because there was "a break in the footage." Moreover, Ott was unaware that, at the time that the alleged phone call occurred, J.H. was checked into the hospital.

**{¶20}** Swogger argues that the jury should have discredited J.H.'s testimony because he alleges that it was internally inconsistent. Swogger claims that J.H.'s decision to return to bed with him after she woke up from the alleged attack made her testimony illogical, such that the jury's decision to accept it created a manifest miscarriage of justice.

**{¶21}** The jury did not, in giving little weight to J.H.'s decision to return to the bed, create a manifest miscarriage of justice. J.H. gave a consistent reason for why she returned. On direct examination, she testified that, when she had previously attempted to leave Swogger, "it made him really mad." On re-direct, J.H. testified that she went back to bed with Swogger only because she was "terrified of" him. A rational basis therefore existed for the jury's decision. Courts have, moreover, recognized that women occasionally return to men who commit violent acts towards them. *See, e.g.*, *State v. Haines*, 2006-Ohio-6711, ¶ 65. The jury, using its reason and common sense, did not lose its way in deciding to give little weight to J.H.'s decision to return to bed with Swogger.

**{¶22}** Mindful of the presumption in favor of the finder of fact, we find that a rational basis exists in the record for the jury's resolution of the evidentiary conflict. Swogger's conviction was, therefore, not against the manifest weight of the evidence. Swogger's second assignment of error is overruled.

## The Trial Court Did Not Abuse its Discretion by Denying an Eve-of-Trial Request From Swogger for New Appointed Counsel

**{¶23}** In his final assignment of error, Swogger maintains that his right to counsel was violated because the trial court refused to appoint substitute trial counsel for Swogger the day before his trial was scheduled to begin.

**{¶24}** An indigent defendant in a criminal case has a right to competent representation by a court-appointed attorney, but that defendant has "'no right to have a particular attorney . . . [appointed,] and therefore must demonstrate "good cause" to warrant substitution of counsel.'" *State v. Cowans*, 87 Ohio St.3d 68, 72 (1999), quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). "'[T]he trial judge may * * * [deny the requested substitution and] require the trial to proceed with assigned counsel

participating if the complaint * * * is unreasonable.'" (Bracketed text in original.) *Id.*, quoting *State v. Deal*, 17 Ohio St.2d 17 (1969), syllabus. "The trial court's decision is reviewed under an abuse-of-discretion standard." *Id.* at 73, citing *Iles* at 1130, fn. 8.

**{¶25}** "An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence." *State v. Eberhardt*, 2020-Ohio-4124, ¶ 39 (5th Dist.).

**{¶26}** "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286 (1988), paragraph four of the syllabus. "The right to counsel must be balanced against the court's authority to control its docket, as well as its awareness that a 'demand for counsel may be utilized as a way to delay the proceedings or trifle with the court.'" *State v. Vaughn*, 2006-Ohio-6577, ¶ 18 (8th Dist.), quoting *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988). "Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include 'the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.'" *State v. Jones*, 91 Ohio St.3d 335, 342 (2001), quoting *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

**{¶27}** The trial court did not abuse its discretion by refusing to appoint Swogger substitute counsel.

{¶28} Swogger's request to have a new attorney appointed was untimely. Swogger first expressed his desire to have substitute counsel appointed at his final pretrial hearing the day before his trial was scheduled to begin. At a pretrial hearing the previous week, Swogger mentioned to the trial judge that he needed to meet with his attorney to talk about additional evidence that Swogger believed would be important to his defense. At another earlier pretrial hearing approximately two weeks before trial, Swogger's attorney did mention to the judge that Swogger "did indicate today some dissatisfaction with my representation of him. I don't know if he would like me to go forward and continue as his counsel or not." The judge followed up on Swogger's concerns and asked him: "Do you have any questions, George? I don't want you to walk out of here unsure." Swogger replied that he did not. Swogger's untimely request for substitute counsel imposed a burden on the trial judge's docket, and, in view of Swogger's substantial behavioral outbursts during his pretrial hearings, the trial judge had good reason to view the request as part of an effort by Swogger to delay his case.

{¶29} The trial court engaged in a substantial inquiry into Swogger's complaint. The trial judge asked Swogger: "what has she done? She's contacted your witnesses and subpoenaed them to appear." After Swogger expressed his concerns — with great disrespect, we note — the trial judge gave Swogger's attorney the opportunity to explain in detail the circumstances surrounding Swogger's complaint. The judge asked a number of questions to both parties and developed a thorough record of why Swogger believed that his attorney's representation was inadequate. From our review of the record taken at the final pretrial hearing, we find that the trial judge substantially inquired into Swogger's complaint.

{¶30} The conflict between Swogger and his trial attorney did not prevent the presentation of an adequate defense. The core of Swogger's dissatisfaction centers around his attorney's alleged failure to pursue additional evidence. Swogger provided his attorney with the names of at least three witnesses whom he wanted her to contact on behalf of his defense. One of these witnesses was an attendee of the Super-Bowl party at which the incident occurred. That witness would allegedly have testified that J.H. left the party prior to the time the incident was alleged to have occurred. Swogger's attorney, however, determined that this potential witness would not have had any relevant testimony to provide. The other witness, Swogger claimed, would have had video evidence of J.H. visiting the Head Start Center in Canton immediately after the alleged incident occurred. Swogger's attorney contacted the director of that facility, but the attorney declined to issue a subpoena because she was informed that any video evidence that may have existed from that date had been erased. The final witness — Daniel Ott — was contacted, was subpoenaed, and did testify at trial in Swogger's defense.

{¶31} Swogger's trial attorney provided him with a competent and effective defense. She indicated that she met with Swogger on multiple occasions throughout the pretrial process to review all discovery materials and all required paperwork. She considered each of the three potential witnesses, and she followed up with two of them. She explained to Swogger what the evidence that the state was likely to use against him was, and she counseled him on how the jury was likely to weigh that evidence. We note, too, that she obtained an acquittal on the more serious charge of felonious assault.

{¶32} The record supports the trial judge's determination that any day-before-trial problems between Swogger and his attorney did not jeopardize Swogger's right to the

effective assistance of counsel.  Swogger's request for substitute counsel was therefore made without good cause, and the trial judge did not abuse his discretion in denying it. Swogger's third assignment of error is overruled.

{¶33}  For the reasons explained above, we affirm Swogger's domestic-violence conviction.


By: Gormley, J.

Montgomery, P.J. and

Popham, J. concur.